# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-80002-sgj11<br>(Jointly Administered) |
| PROSPECT CCMC, LLC; *et al.*,[2]<br><br>Plaintiffs,<br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary, United States Department of Health and Human Services; and MEHMET OZ, in his official capacity as Administrator, Centers For Medicare and Medicaid Services,<br><br>Defendants. | Adv. Proc. No. 25-_____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Certain debtor affiliates of Prospect Medical Holdings, Inc., as debtors and debtors in possession (collectively, "Plaintiffs" or "Crozer Debtors"), by and through their undersigned attorneys, file this Complaint for Declaratory and Injunctive Relief (this "Complaint") against Robert F. Kennedy, Jr., in his official capacity as Secretary, United States Department of Health and Human Serves ("HHS") and Dr. Mehmet Oz, in his official capacity as Administrator, Centers for Medicare and Medicaid Services ("CMS") (together, "Defendants"), and allege as follows:

---

[1] A complete list of each of the Debtors in the above-captioned chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.omniagentsolutions.com/?clientId=3725. The Debtors' mailing address is 3415 S. Sepulveda Blvd., Los Angeles, CA 90034.

[2] The Plaintiffs in this adversary proceeding are Prospect Penn, LLC; Prospect Crozer, LLC; Prospect CCMC, LLC; Prospect DCMH, LLC; Prospect Crozer Urgent Care, LLC; Prospect Penn Health Club, LLC; Prospect Crozer Home Health and Hospice, LLC; Prospect Crozer Ambulatory Surgery, LLC; Prospect Health Services PA, Inc.; and Prospect Provider Group PA, LLC.

**NATURE OF THE CASE**

1. This is an action for declaratory, injunctive, and monetary relief with respect to Defendants' willful violation of the automatic stay and discrimination against the Debtors based solely on their status as debtors in bankruptcy. The Crozer Debtors are a subset of Prospect Medical Holdings, Inc. and its hospital-related debtor affiliates (the "HCo Debtors"), PHP Holdings, LLC ("PHPH"), and the physician-related debtor affiliates (together with PHPH, the "PCo Debtors") as the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, "Prospect," or the "Debtors").

2. The Debtors have closed their Pennsylvania Hospitals (defined below) but, in an effort to minimize the determinantal impact on patients, are continuing to operate affiliated Pennsylvania ASC/Imaging Sites (defined below) pending the sale of those sites, which transaction is anticipated to close at the end of this month. In light of the anticipated closing date of this transaction, the Crozer Debtors have been in discussions with CMS since May 29, 2025 regarding voluntary termination of CCMC's (as defined below) Medicare enrollment on a mutually agreeable date that aligns with the transaction closing date, and a reduction in fee-for-service payments for the care provided at the Pennsylvania ASC/Imaging Sites in order to allow for uninterrupted care of Medicare patients until the transaction closing date.

3. The Debtors, supported by their key constituents, made every effort to avoid closure of the Pennsylvania Hospitals. When that proved impossible, in order to mitigate impact on patients, the Crozer Debtors chose to bear cost of maintaining operations at the Pennsylvania ASC/Imaging Sites until they could be transferred to a new operator through the United States Bankruptcy Court for the Northern District of Texas's (the "Court") approved sale process. The Crozer Debtors' decision to maintain the Pennsylvania ASC/Imaging Sites was predicated on (i) a desire to minimize the disruption to patient care and the communities in which the closing hospitals

2

were located and (ii) the understanding that the ongoing settlement discussion with CMS would permit a portion of fee-for-service payments to be billed for Medicare reimbursement.

4. On July 1, 2025, however, after more than a month of continuing settlement discussions relating to a voluntary termination of CCMC's Medicare enrollment and a reduction in fee-for-service payments at the Pennsylvania ASC/Imaging Sites, CMS suddenly reversed course, stating that there would be no further conversations about a potential resolution and that CMS was terminating Medicare enrollment for CCMC and the Pennsylvania ASC/Imaging Sites effective as of June 21, 2025.

5. Shockingly, it has become apparent that CMS is attempting to leverage play and is unfairly penalizing Prospect with regard to this issue because of prepetition amounts that CMS believes it is due. Clearly, CMS is discriminating against Prospect for filing these chapter 11 cases in light of the prepetition CMS Obligations (defined below). CMS's insinuation that settlement discussions could only continue if the Crozer Debtors were able to pay these prepetition amounts, and that CCMC's Medicare enrollment would be terminated if the Crozer Debtors are unable to pay these prepetition debts is a clear violation of section 525 of the Bankruptcy Code. Moreover, CMS's attempts to garnish amounts due to the Crozer Debtors postpetition on account of prepetition debts are also violations of the automatic stay.

6. The Crozer Debtors have made every effort, often at great expense, to preserve access to patient services in Delaware County. While CMS claims that it "works in partnership with the entire health care community to improve quality, equity and outcomes in the health care system," its actions in this case have been the exact opposite. Centers for Medicare & Medicaid Services, *About Us*, https://www.cms.gov/about-cms (last visited July 11, 2025).

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, 2201, and 2202.

8. This proceeding arises under and arises in title 11 and is a core proceeding pursuant to 28 U.S.C. § 157(b) because it seeks to enforce the automatic stay pursuant to 11 U.S.C. § 362 and the Debtors' rights under 11 U.S.C. § 525. In all events, the Debtors consent to entry by the Court of a final judgment in this proceeding.

9. Venue is proper before this Court pursuant to 28 U.S.C. § 1409(a).

**PARTIES**

10. Plaintiffs are debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Bankruptcy Rules.

11. Defendant Robert F. Kennedy, Jr. is the Secretary of HHS and is responsible for the conduct and policies of HHS, including those relating to CMS, an agency within HHS. The Secretary maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201, and is sued in his official capacity only.

12. Defendant Dr. Mehmet Oz is the Administrator of CMS and is responsible for the conduct and policies of CMS. The Administrator maintains an office at 200 Independence Avenue, S.W., Washington, D.C. 20201, and is sued in his official capacity only.

4

**GENERAL BACKGROUND**

A.   **The Debtors' Business**

13.   The Debtors, including the Crozer Debtors, and their non-Debtor affiliates (collectively, the "Company") are significant providers of coordinated regional healthcare services in California, Connecticut, Pennsylvania, and Rhode Island.  The Company's business can be broadly divided into two segments: (1) hospital operations, which consist of, among other things, the ownership and operation of acute care and behavioral hospitals, providing a wide range of inpatient and outpatient services spanning multiple states (collectively, "HospitalCo"), and (2) prior to the Astrana Sale, physician-related services, including certain owned and managed medical groups, independent physician associations, managed services organizations and risk taking entities (collectively, "PhysicianCo").

14.   Following the close of the Astrana sale on July 1, 2025 the ownership of former PhysicianCo affiliates Prospect Health Plan, Inc., a Knox-Keene licensed entity, and Alta Newport Hospital, LLC dba Foothill Regional Medical Center ("FRMC"), a licensed acute hospital, were transferred to Astrana.  The remaining PhysicianCo entities have ceased operations and no longer employ any employees.

15.   Beginning on January 11, 2025 (the "Petition Date"), each of the HCo Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court (the "HCo Chapter 11 Cases").  A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases, are set forth in greater detail in the *Declaration of Paul Rundell in Support of Chapter 11 Petitions and First Day Pleadings* [Main Case, Docket No. 41] (the "HCo First Day Declaration").

16.   On July 7, 2025 (the "PCo Petition Date"), each of the PCo Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "PCo Chapter 11 Cases"

5

and, together with the HCo Chapter 11 Cases, the "Chapter 11 Cases"). A detailed description of the PCo Debtors and their business, and the facts and circumstances of the PCo Debtors' chapter 11 cases, is set forth in the *Declaration of Paul Rundell in Support of the PCo Debtors' Chapter 11 Petitions and First Day Pleadings* [Main Case, Docket No. 2453] (the "Supplemental First Day Declaration" and, together with the HCo First Day Declaration, the "First Day Declarations").

17. The Chapter 11 Cases are jointly administered for procedural purposes under case number 25-80002 (the "Main Case"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in the Chapter 11 Cases. On January 29, 2025, the Office of the United States Trustee appointed the Official Unsecured Creditors' Committee [Main Case, Docket No. 295]. On January 30, 2025, the U.S. Trustee appointed Suzanne Koenig as the patient care ombudsman in the HCO Chapter 11 Cases.

**B.    The Debtors' Pennsylvania Hospitals and Medicare**

18. In July 2016, certain of the Crozer Debtors acquired Crozer Health, which consisted of four general acute care hospitals, several outpatient facilities, and a comprehensive physician network of primary care and specialty practices (collectively, the "Pennsylvania Hospitals").

19. The Crozer Debtors operate three ambulatory surgery centers and two imaging sites at Crozer Medical Plaza at Brinton Lake, Crozer Health at Broomall, Media Medical Plaza and the Surgery Center at Haverford (the "Pennsylvania ASC/Imaging Sites") which service Delaware County, PA and the surrounding areas (the "PA Community"). The Pennsylvania ASC/Imaging Sites provide, among other things, surgical care and medical imaging services and are currently operated and billed as hospital outpatient departments ("HOPDs") under the Hospital Outpatient Prospective Payment System ("OPPS").

6

20. As HOPDs, the Pennsylvania ASC/Imaging Sites are licensed in accordance with Pennsylvania state law and enrolled in Medicare under the same Medicare provider agreement and CMS Certification Number as the main facility providing inpatient services (the "Medicare Enrollment"). The Pennsylvania ASC/Imaging Sites continue to be overseen and operated by Debtor Prospect CCMC, LLC ("CCMC," formerly known as Crozer Chester Medical Center) pursuant to integrated financial, clinical, and administrative services that historically supported the main inpatient facility and all of its HOPDs.

21. As described further below, the HCo Debtors, supported by their key constituents, took every effort to avoid closure of the Debtors' Pennsylvania Hospitals. When this proved impossible, the Pennsylvania hospitals were forced to wind down their operations and CCMC ceased providing inpatient services as of May 2, 2025.

22. Despite the cessation of inpatient services at CCMC, the Delaware County patient community continues to rely on CCMC for outpatient services, including scheduled procedures and imaging services. Since May 1, 2025, the Pennsylvania ASC/Imaging Sites have served approximately 9,166 patients, the majority of which (approximately 5,053) are enrolled in Medicare, Medicare Advantage, Medicaid, or Medicaid managed care.[3] CCMC anticipates similar patient volumes through the month of July, including 4,816 patient procedures, many of which have been scheduled for weeks[4]—and including over 3,000 mammographies. Accordingly, there would be significant disruption in patient care if patients are forced to seek care elsewhere and wait for scheduling availability at another facility.

---

[3] Total patient volume of all payors at the Pennsylvania ASC/Imaging Sites between May 1, 2025 and July 3, 2025.

[4] Total patients scheduled at the Pennsylvania ASC/Imaging Sites between July 4, 2025 and July 31, 2025.

7

C. **The Closure and Sale Orders**

23. Persistent operating losses, which pre-dated and continued after the Debtors' acquisition of the Pennsylvania Hospitals, led the Debtors to initiate a marketing process to divest the Pennsylvania Hospitals. On February 3, 2025, the HCo Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and the Private Sale of the Pennsylvania Hospitals Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Settlement by and among the Debtors, the Pennsylvania Attorney General, Samuel Lee, and David Topper, Pursuant to Bankruptcy Rule 9019; and (II) Granting Related Relief* [Docket No. 332] (the "PA Sale Motion"), seeking approval to, among other things, transfer the Pennsylvania Hospitals to an entity supported by the Commonwealth of Pennsylvania (the "Commonwealth"). Unfortunately, shortly after filing the PA Sale Motion, the HCo Debtors learned that the entity they had negotiated with to take over the Pennsylvania Hospitals would be unable to complete a transaction in the required time frame.

24. Following this news, the HCo Debtors worked closely with the Pennsylvania Attorney General, to attempt to find a willing future operator of the Pennsylvania Hospitals.

25. Despite the HCo Debtors' extensive marketing efforts, the HCo Debtors were not able to secure a buyer or new operator for the Pennsylvania Hospitals. Given the mounting losses at the hospitals, the lack of continued available funding, and the absence of a replacement operator or actionable funded alternative, the HCo Debtors made the difficult decision to seek approval of a safe and expeditious closing process for the Pennsylvania Hospitals.

26. On April 21, 2025, the HCo Debtors filed the *Supplement to the Debtors' Emergency Motion for Entry of an Order (I) Approving the Closure of the Pennsylvania Hospitals; and (II) Granting Related Relief* [Docket No. 1574] (the "Supplemental Closure Motion"), seeking

to approve (i) the HCo Debtors' updated closure plan with the cessation of certain services beginning on April 22, 2025, and (ii) procedures to sell available assets of the Pennsylvania Hospitals.

27. The Supplemental Closure Motion informed the Court that (i) the HCo Debtors had received interest from several parties regarding the Pennsylvania ASC/Imaging Sites; and (ii) the HCo Debtors intended to continue operating the Pennsylvania ASC/Imaging Sites during an expedited marketing and sale process.

28. The Crozer Debtors bore the cost of maintaining operations at the Pennsylvania ASC/Imaging Sites throughout the Court's approved sale process. The Crozer Debtors decided to continue services at the Pennsylvania ACS/Imaging Sites to minimize disruption to patient care and the surrounding communities based on the Crozer Debtors' understanding that ongoing settlement discussions with CMS (described below) would allow the Pennsylvania ACS/Imaging Sites to bill a portion of fee-for-service payments for Medicare/Medicaid reimbursement.

29. On April 23, 2025 the Court entered an order approving the Supplemental Closure Motion [Docket No. 1613] (the "Closure Order"), and the HCo Debtors commenced the closure of the Pennsylvania Hospitals. The Closure Order does not require termination of Medicare enrollment as part of the authorized relief. CMS neither objected to the Closure Order, nor did CMS ask for specific notice related to the closure process.

30. On July 3, 2025, the Court issued an order approving the sale of the Pennsylvania ASCI/Imaging Sites free and clear of interests [Docket No. 2412] (the "PA Sale Order"). The Sale Order requires the Crozer Debtors to continue to operate the Pennsylvania ASC/Imaging Sites in accordance with customary practice. CMS did not object or otherwise seek relief with regard to Medicare enrollment in the PA Sale Order, even though it was closely involved in the process,

even at one point filing a limited objection seeking to ensure that any buyer assumed full successor liability with respect to certain Medicare Provider Agreements.

31. In reliance on a combination of CMS's inaction, representations, and mission to work in partnership with the healthcare community, the Crozer Debtors acted in good faith by continuing to provide healthcare services to an underserved community

### D. CCMC's Prepetition Obligations to CMS[5]

32. CCMC owes CMS over $8,00,000 in prepetition liabilities (the "CMS Obligations"). The CMS Obligations relate to prepetition debts of CCMC to CMS for (i) certain advance payments ("COVID Advances") received from CMS related to the COVID-19 pandemic; and (ii) cost reports for individual claims debts ("Cost Reports").

### E. Settlement Discussions between the Crozer Debtors and CMS

33. In accordance with the Sale Order and in light of the anticipated closing date of the transaction, CCMC has been in discussions with CMS since May 29, 2025, regarding (i) a mutually agreeable Medicare enrollment termination date for the Pennsylvania ASC/Imaging Sites (the "Voluntary Termination") and (ii) a reduction in fee-for-service payments (the "Payment Reduction") for postpetition services rendered from May 1, 2025 onwards at the Pennsylvania ASC/Imaging Sites.

34. On May 29, 2025, the parties discussed the possibility of CMS continuing CCMC's Medicare enrollment and treating the Pennsylvania ASC/Imaging Sites as though they were free-standing ambulatory surgery centers and independent diagnostic testing facilities, thereby permitting these facilities to bill and collect (i) from the Medicare program under the ASC fee schedule for the surgical procedures performed at the ASCs and (ii) the Medicare physician fee

---

[5] CMS also alleges that a second debtor affiliated hospital, Delaware County Memorial Hospital ("DCMH"), owes CMS approximately $10.5 million in prepetition liabilities.

10

schedule for the imaging services performed at the Imaging Sites. Following these discussions, the Crozer Debtors placed a hold, effective as of June 3, 2025, on new Medicare and Medicaid claims for services furnished after May 1, 2025 at the Pennsylvania ASC/Imaging Sites (reimbursements for such claims, the "Medicare Reimbursements").

35. On June 6, 2025, counsel for CMS indicated that CMS would consider a Voluntary Termination with an effective date of the earlier of August 1 or the closing date for the sale of the Pennsylvania ASC/Imaging Sites, provided that CCMC also agreed to a Payment Reduction of 38 percent for the ambulatory service centers and 63 percent for the imaging sites.

36. Despite the ongoing discussions related to the effective date of CCMC's Voluntary Termination, on the same date CCMC also received a Notification of Termination letter from CMS, stating that "[n]otwithstanding CCMC's representation that it would voluntarily terminate its Medicare enrollment, CMS has determined that CCMC is not in compliance with the applicable Medicare statutory and regulatory provisions," and that CMS would be terminating CCMC's Medicare provider agreement effective June 21, 2025 (the "Termination Notice"). According to CMS, the termination of CCMC's provider agreement is based on a determination that CCMC no longer meets the statutory definition of a "hospital" in 42 U.S.C. § 1395x(e) because the facility ceased providing inpatient services on May 2, 2025.

37. Notwithstanding that letter, and consistent with CMS' mission, counsel for CMS indicated that CMS remained open to a resolution that would avoid disruption to patient care and on June 11, 2025, represented that CMS was "moving as fast as possible" to reach a resolution, and "once we reach a settlement in principle," the Parties should discuss logistics of implementation. Crozer Debtors continued to engage in good faith settlement discussions with CMS, notwithstanding the Termination Notice. More importantly, the Pennsylvania ASC/Imaging

11

Sites continued to provide services to the PA Community, with the expectation that these services would be reimbursed.

### F. CMS Abruptly Terminates The ASC's Medicare Enrollment Eligibility

38. On July 1, 2025, after more than a month of continuing settlement discussions relating to the Voluntary Termination and the Payment Reduction, CMS stated there would be no further conversations about a potential resolution and that CMS was terminating Medicare enrollment for CCMC and the Pennsylvania ASC/Imaging Sites effective as of June 21, 2025. CMS also indicated that it would view claims for services furnished since May 1, 2025 as potentially "false or fraudulent," notwithstanding that the Crozer Debtors had not submitted further claims since the parties' initial discussions.

39. This was a dramatic departure from CMS's prior position that it would negotiate an agreeable solution. CMS indicated that ultimately, CMS's decision was largely financial, as CMS recognized that it may not able to recover the prepetition debts for the CMS Obligations, and CMS was unwilling to continue to pay for services at CCMC as a result.

40. Counsel to CMS told the Crozer Debtors that the only possibility of potentially persuading CMS to consider re-visiting their decision would be if CCMC entered into a settlement that allows CMS to recover some or all of that prepetition amount. CMS also has separately pursued recovery of the prepetition CMS Obligations, including by sending letters to the Crozer Debtors demanding such payments.

41. For the most part, the HOPD Claims have not yet been processed and paid as of June 3, 2025, when the Crozer Debtors' voluntary hold on such claims went into effect.

## COUNT I
**Declaratory Judgment**

42. The Crozer Debtors incorporate the allegations set forth in the foregoing paragraphs as if set forth in full below.

43. There exists a substantial, actual controversy between the Crozer Debtors and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

44. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

45. Section 362(a) of the Bankruptcy Code operates as an automatic stay that protects the Crozer Debtors and their estates. *See* 11 U.S.C. § 362(a).

46. Section 525(a) of the Bankruptcy Code provides that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, . . . or other similar grant to, condition such a grant to, discriminate with respect to such a grant against . . . a debtor under the Bankruptcy Act, . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act." *See* 11 U.S.C. § 525.

47. The Crozer Debtors' right to submit claims for and receive Medicare payments from CMS for services they perform for Medicare beneficiaries is property of the estates under Section 541(a) of the Bankruptcy Code. *See* 11 U.S.C. § 541(a).

48. On July 1, 2025, after more than a month of continuing settlement discussions relating to the Voluntary Termination and Payment Reduction, CMS terminated Medicare enrollment for CCMC and the Pennsylvania ASC/Imaging Sites effective as of June 21, 2025.

CMS's actions preclude the Crozer Debtors from submitting claims for Medicare reimbursement. CMS's actions are in violation of the automatic stay.

49. CMS's actions are motivated solely by the Crozer Debtors' non-payment of pre-petition debt. CMS's actions are therefore discriminatory under Section 525(a) of the Bankruptcy Code.

50. The Crozer Debtors respectfully request that the Court enter a declaratory judgment that the Crozer Debtors' right to submit claims and receive Medicare Reimbursements is property of the estates under 11 U.S.C. § 541(a). The Crozer Debtors further request a declaratory judgment that Defendants' termination of CCMC's Medicare enrollment eligibility and associated withholding of Medicare Reimbursements for services that were already provided to Medicare beneficiaries and threats of monetary penalties are (i) an action or proceeding to recover a claim against the Crozer Debtors for pre-petition liabilities prohibited by 11 U.S.C. § 362(a)(1); (ii) an act to obtain possession or control over property of the estates prohibited by 11 U.S.C. § 362(a)(3); (iii) an act to collect, assess or recover a claim against the Crozer Debtors that occurred prior to the Petition Date prohibited by 11 U.S.C. § 362(a)(6); (iv) an attempt to set off against debts that arose prior to the Petition Date prohibited by 11 U.S.C. § 362(a)(7); (v) <u>not</u> an action or proceeding by a governmental unit to enforce a police or regulatory power that is excepted from the automatic stay under 11 U.S.C. § 362(b)(4). Finally, the Crozer Debtors request a declaration that Defendants may not terminate CCMC's Medicare enrollment or refuse to accept and process Medicare Reimbursements after the Petition Date.

## COUNT II
### Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362(a)

51. The Crozer Debtors incorporate the allegations set forth in the foregoing paragraphs as if set forth in full below.

52. Section 362(a) of the Bankruptcy Code operates as an automatic stay that protects the Crozer Debtors and their estates. *See* 11 U.S.C. § 362(a).

53. Defendants' termination of CCMC's Medicare enrollment and associated threats of monetary penalties are willful violations of the automatic stay.

54. Defendants have further made express post-petition demands for payment of pre-petition CMS Obligations in violation of the automatic stay.

55. Section 362(k) of the Bankruptcy Code provides that a party "injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

56. The Crozer Debtors have been damaged by Defendants' willful violations of the automatic stay under Section 362(a) of the Bankruptcy Code.

57. The Crozer Debtors request that the Court enter a judgment in favor of the Crozer Debtors against Defendants awarding actual damages, including costs and attorneys' fees, in accordance with Section 362(k) of the Bankruptcy Code, in an amount to be proven at trial.

### COUNT III
### Violation of 11 U.S.C. § 525

58. The Crozer Debtors incorporate the allegations set forth in the foregoing paragraphs as if set forth in full below.

59. Section 525(a) of the Bankruptcy Code provides that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, . . . or other similar grant to, condition such a grant to, discriminate with respect to such a grant against . . . a debtor under the Bankruptcy Act, . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act." *See* 11 U.S.C. § 525.

15

60. Defendants' termination of CCMC's Medicare enrollment and threats of monetary penalties are discriminatory acts taken solely because the Crozer Debtors are debtors under title 11.

61. The Crozer Debtors have been damaged by Defendants' discriminatory actions in violation of Section 525(a) of the Bankruptcy Code.

62. The Crozer Debtors request that the Court enter a judgment in favor of the Crozer Debtors against Defendants awarding actual damages, including costs and attorneys' fees, in accordance with Section 525(a) of the Bankruptcy Code, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Crozer Debtors respectfully pray for judgment as follows:

I. The Crozer Debtors request that this Court enter a declaratory judgment in favor of the Crozer Debtors against Defendants as set forth in Count I herein;

II. The Crozer Debtors request damages, including actual damages, costs, and attorneys' fees, relating to Defendants' violations of Section 362(a) and 525(a) of the Bankruptcy Code, as set forth in Counts II and III herein;

III. The Crozer Debtors request that this Court enjoin Defendants from continuing to violate Section 362(a) and 525(a) of the Bankruptcy Code; and

IV. Additionally, the Crozer Debtors request such other and further relief as this Court may deem just and proper.

Dated: July 11, 2025
Dallas, Texas

/s/ *Jon W. Muenz*

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    tom.califano@sidley.com
    rpatel@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Jon W. Muenz (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:    wcurtin@sidley.com
    jmuenz@sidley.com
    pventer@sidley.com
    anne.wallice@sidley.com

*Attorneys for the Crozer Debtors*