## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |
| PROSPECT CCMC, LLC, *et al.*,[2] | |
| Plaintiffs, | |
| v. | |
| ROBERT F. KENNEDY, JR., in his official capacity as Secretary, United States Department of Health and Human Services; and MEHMET OZ, in his official capacity as Administrator, Centers For Medicare and Medicaid Services, | Adv. Proc. No. 25-08009 (SGJ) |
| Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF THE MOTION TO DISMISS

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2] The Plaintiffs in this adversary proceeding are Prospect Penn, LLC; Prospect Crozer, LLC; Prospect CCMC, LLC; Prospect DCMH, LLC; Prospect Crozer Urgent Care, LLC; Prospect Penn Health Club, LLC; Prospect Crozer Home Health and Hospice, LLC; Prospect Crozer Ambulatory Surgery, LLC; Prospect Health Services PA, Inc.; and Prospect Provider Group PA, LLC.

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*8300 Buckeye Delaware LLC v. UPS Supply Chain Sols., Inc.*,
   No. 4:22-cv-00726-O, 2023 WL 7273712 (N.D. Tex. Sept. 17, 2023) .................................... 11

*Affiliated Professional Home Health Care Agency v. Shalala*,
   164 F.3d 282 (5th Cir. 1999) ........................................................................................ 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 4

*Berry v. Lee*,
   428 F. Supp. 2d 546 (N.D. Tex. 2006) ........................................................................... 4

*Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*,
   461 U.S. 273 (1983) ...................................................................................................... 14

*Row 1 Inc. v. Becerra*,
   92 F.4th 1138, 1140 (D.C. Cir. 2024) ............................................................................ 6

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
   394 F.3d 285 (5th Cir. 2004) .......................................................................................... 4

*Dallas Healthcare, Inc. v. Health and Human Servs. Com'n*,
   921 F.Supp. 426 (N.D. Tex. 1996) ............................................................................... 14

*Devon Enters., L.L.C. v. Arlington Indep. Sch. Dist.*,
   541 F. App'x 439 (5th Cir. 2013) ................................................................................. 24

*F.C.C. v. NextWave Pers. Commc'ns Inc.*,
   537 U.S. 293 (2003) ...................................................................................................... 24

*FG Hemisphere Assocs., LLC v. Republique du Congo*,
   455 F.3d 575 (5th Cir. 2006) ........................................................................................ 22

*Franconia Assocs. v. U.S.*,
   536 U.S. 129 (2002) ...................................................................................................... 14

*Freeman v. United States*,
   556 F.3d 326 (5th Cir. 2009) ........................................................................................ 15

*In re AHN Homecare, LLC*,
   222 B.R. 804 (Bankr. N.D. Tex. 1998) .................................................................. 21, 22

*In re Benjamin*,
   932 F.3d 293 (5th Cir. 2019) .................................................................................. 13, 24

*In re Chateaugay Corp.*,
   920 F.2d 183 (2d Cir. 1990) ......................................................................................... 22

*In re Enron Corp. Sec. Deriv. & ERISA Litig.*,
   C.A. No. H-01-3624, 2006 WL 8447802 (S.D. Tex. Nov. 11, 2006) ............................ 3

*In re FiberTower Network Servs. Corp.*,
   482 B.R. 169 (Bankr. N.D. Tex. 2012) .................................................................... 19, 20

*In re First RepublicBank Corp.*,
   113 B.R. 277 (Bankr. N.D. Tex. 1989) ........................................................................ 23

*In re Freemyer Indus. Pressure, Inc.*,

ii

281 B.R. 262 (Bankr. N.D. Tex. 2002) ........................................................................ 23
*In re Orthotic Center, Inc.,*
193 B.R. 832 (N.D. Ohio 1996) ................................................................................... 18
*In re Roxwell Performance Drilling, LLC,*
No. 13-50301-RLJ-11, 2014 WL 2800767 (Bankr. N.D. Tex. June 19, 2014) ........ 22
*In re S. Recycling, L.L.C.,*
982 F.3d 374 (5th Cir. 2020) ........................................................................................ 3
*In re San Angelo Pro Hockey Club, Inc.,*
292 B.R. 118 (Bankr. N.D. Tex. 2003) ...................................................................... 23
*In re St. Johns Home Health Agency, Inc.,*
173 B.R. 238 (Bankr. S.D. Fla. 1994) .......................................................................... 7
*In re Trevino,*
615 B.R. 108 (Bankr. S.D. Tex. 2020) ....................................................................... 11
*In re Tri Cnty. Home Health Servs., Inc.,*
230 B.R. 106 (Bankr. W.D. Tenn. 1999) .................................................................... 19
*In re Vitalsigns Homecare, Inc.,*
396 B.R. 232 (Bankr. D. Mass. 2008) ........................................................................ 19
*In re Yelverton,*
No. 09-00414, 2014 WL 7141938 (Bankr. D.D.C. Dec. 12, 2014) ............................ 17
*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.,*
920 F.3d 890 (5th Cir. 2019) ........................................................................................ 3
*Ingle v. Butler,*
No. 2:24-CV-140-Z-BR, 2025 WL 1184657 (N.D. Tex. Apr. 1, 2025) ..................... 10
*Lane v. Pena,*
518 U.S. 187 (1996) ..................................................................................................... 14
*Lormand v. US Unwired, Inc.,*
565 F.3d 228 (5th Cir. 2009) ....................................................................................... 23
*Maloney Gaming Mgmt., LLC v. St. Tammany Parish,*
456 F. App'x 336 (5th Cir. 2011) .................................................................................. 4
*Med-Cert Home Care, LLC v. Azar,*
365 F. Supp. 3d 742 (N.D. Tex. 2019) ....................................................................... 21
*Mission Product Holdings, Inc. v. Tempnology, LLC,*
587 U.S. 370 (2019)..................................................................................................... 16
*Mount Sinai Hosp. of Greater Miami, Inc. v. Weinberger,*
517 F.2d 329 (5th Cir. 1975) ....................................................................................... 21
*Papasan v. Allain,*
478 U.S. 265 (1986) ..................................................................................................... 22
*Parkview Adventist Med. Ctr. v. United States on behalf of Dep't of Health & Hum. Servs.,*
842 F.3d 757 (1st Cir. 2016) ........................................................................... 19, 24, 25
*Raleigh v. Illinois Dep't of Revenue,*
530 U.S. 15 (2000)....................................................................................................... 16
*Sahara Health Care, Inc. v. Azar,*
349 F. Supp. 3d 555 (S.D. Tex. 2018) ........................................................................ 16
*Sahara Health Care, Inc. v. Azar,*

iii

    975 F.3d 523, 530 (5th Cir. 2020) ........................................................ 21

*Shah v. Azar,*
    920 F.3d 987 (5th Cir. 2019) .............................................................. 17

*Shalala v. Illinois Council on Long Term Care, Inc.,*
    529 U.S. 1 (2000)............................................................................. 7

*Smith v. Berryhill,*
    587 U.S. 471 (2019).......................................................................... 12

*Stringer v. Whitley,*
    942 F.3d 715 (5th Cir. 2019) .............................................................. 10

*Timberlawn Mental Health System v. Burwell,*
    No. 3:15–CV–2556–M, 2015 WL 4868842 (N.D. Tex. 2015)........................... 14

*Torch Inc. v. LeBlanc,*
    947 F.2d 193 (5th Cir. 1991) .............................................................. 10

*Travis v. City of Grand Prairie,*
    No. 3:14-cv-3650-P, 2015 WL 13002069 (N.D. Tex. Aug. 6, 2015).................... 3

*United States ex rel. Yelverton v. Fed. Ins. Co.,*
    831 F.3d 585 (D.C. Cir. 2016) ............................................................ 18

*United States v. Inslaw, Inc.,*
    932 F.2d 1467 (D.C. Cir. 1991) ........................................................... 18

*United States v. Nordic Village Inc.,*
    503 U.S. 30 (1992)........................................................................... 14

*United States v. Testan,*
    424 U.S. 392 (1976).......................................................................... 15

*Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.,*
    No. 3:20-CV-1348-D, 2020 WL 4784717 (N.D. Tex. Aug. 18, 2020) .............. 11, 12

*Weinberger v. Salfi,*
    422 U.S. 749 (1975).......................................................................... 13

**Statutes**

11 U.S.C. § 106 ...................................................................................... 15
11 U.S.C. § 362 ............................................................................... 17, 20, 22
11 U.S.C. § 525 ............................................................................... 23, 24, 25
11 U.S.C. § 541 ........................................................................ 14, 15, 16, 17
11 U.S.C. § 542 ...................................................................................... 17
28 U.S.C. § 1334 .................................................................................... 14
42 U.S.C. § 405 ............................................................................... 6, 12, 24
42 U.S.C. § 1395 ...................................................................................... 4
42 U.S.C. § 1395cc ......................................................................... 5, 6, 7, 13, 17
42 U.S.C. § 1395ff .................................................................................. 6, 7
42 U.S.C. § 1395g .................................................................................... 21
42 U.S.C. § 1395x ............................................................................... 5, 6, 9

## Regulations

42 C.F.R. § 400.202 .............................................................................................. 5
42 C.F.R. § 405.373 ............................................................................................ 21
42 C.F.R. § 413.65 .............................................................................................. 9
42 C.F.R. § 424.101 ............................................................................................. 5
42 C.F.R. § 424.500 ............................................................................................. 5
42 C.F.R. § 424.505 ......................................................................................... 5, 13
42 C.F.R. § 489.52 .............................................................................................. 5
42 C.F.R. § 489.53 .............................................................................................. 5
42 C.F.R. § 489.54 .............................................................................................. 5
42 C.F.R. § 498.40 .............................................................................................. 7

## Other Authorities

55 Fed. Reg. 9363 (March 13, 1990) ............................................................... 5
66 Fed. Reg. 35437-03 (July 5, 2001) .............................................................. 5
140 Cong. Rec. H10,766 (daily ed. Oct. 4, 1994) .......................................... 15
H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367-68 (1977) ........................ 16

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STANDARDS OF REVIEW ........................................................................................... 3

STATUTORY AND REGULATORY FRAMEWORK .................................................. 4

   I.   Pertinent Statutes and Regulations Regarding the Medicare Program ................................. 4

   II.  CMS' Statutory Authority to Terminate Medicare Provider Agreements ........................... 5

   III. Medicare Administrative and Judicial Review ...................................................... 6

RELEVANT STATEMENT OF FACTS ........................................................................ 7

ARGUMENT ................................................................................................................... 9

   I.   Count I Must Be Dismissed Because the Court Lacks Subject Matter Jurisdiction to Declare That CMS Unlawfully Issued the Termination Notice and the Debtors Have No Claim that Medicare Receivables are Property of the Estates or that Terminating CCMC's Provider Agreement Violated the Automatic Stay ............................................................... 9

      A.   The Court Lacks Subject Matter Jurisdiction to Retroactively Declare that CMS Could Not Terminate CCMC's Medicare Provider Agreement ................................................. 11

      B.   Plaintiffs' Request for a Declaration That "Medicare Reimbursements" Constitute Property of the Estates Under 11 U.S.C. § 541 Is Barred by Sovereign Immunity ....... 14

      C.   Plaintiffs' Request for a Declaration That "Medicare Reimbursements" Constitute Property of the Estates Under Section 541 of the Bankruptcy Code Must Be Denied for Failure to State a Claim ................................................................................. 15

      D.   Plaintiffs' Request for a Declaration that CMS Violated the Automatic Stay for Allegedly Attempting to Recover Unbilled Claims Must Be Denied Because 11 U.S.C. § 362 Cannot Be Used to Liquidate Disputed Claims ................................................. 17

      E.   Plaintiffs' Request for a Declaration That CMS Violated the Automatic Stay for Terminating CCMC's Medicare Provider Agreement Must Be Denied for Failure to State a Claim Because the Termination Was an Exercise of CMS' Police and Regulatory Power Under Section 362(b)(4) of the Bankruptcy Code ........................... 18

      F.   Plaintiffs' Request for a Declaration that CMS Violated the Automatic Stay for Allegedly Demanding Payment of Prepetition CMS Obligations Must Be Denied for Failure to State Claim Because Medicare Recoupment Is Not Subject to 11 U.S.C. § 362 ......................................................................................................... 20

   II.  Count II of the Complaint Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted Because Corporate Debtors Are Not Entitled to Damages Under 11 U.S.C. § 362(k). ...................................................................................... 22

   III. Count III Must Be Dismissed Because CMS' Termination of CCMC's Medicare Enrollment Was Not Discriminatory Under 11 U.S.C. § 525(a) ...................................... 23

CONCLUSION ............................................................................................................... 25

vi

## <u>INTRODUCTION</u>

This case presents one simple legal issue: whether CMS may lawfully terminate a hospital's Medicare Part A provider agreement once the hospital shutters its doors and stops providing inpatient services. The unequivocal answer is yes. The Medicare Act (defined below) mandates that CMS terminate a provider's enrollment when the provider no longer qualifies as a hospital or otherwise fails to comply with all its statutory and regulatory obligations. Here, the Debtors closed their Pennsylvania hospital, Crozer-Chester Medical Center ("<u>CCMC</u>"), and stopped providing inpatient services as of May 2, 2025. Once CCMC stopped providing inpatient services, it no longer qualified as a Medicare provider prompting CMS to terminate CCMC's enrollment from the Medicare program effective as of June 21, 2025.

CMS' termination occurred in June because the Debtors represented to this Court and all the parties in this case that they would voluntarily terminate CCMC's Medicare provider agreement once CCMC closed its emergency department, which (again) occurred by May 2, 2025. Only after the Debtors failed to voluntarily submit CCMC's enrollment termination did CMS learn that the Debtors were using CCMC's provider number to impermissibly bill Medicare for alleged services being provided by their independent Pennsylvania ASC/Imaging Sites. The week after learning that no voluntary termination was forthcoming, CMS gave its notice of CCMC's enrollment termination based on CCMC's closure as an inpatient facility.

The undisputed fact that CCMC was no longer operating as an inpatient hospital as of May 2, 2025, is the only relevant fact to consider when reviewing the Complaint in a light most favorable to Plaintiffs. However, despite CMS' clear statutory authority to terminate CCMC's Medicare provider agreement when it did, the Debtors attempt to challenge CMS' termination

1

decision through this proceeding by disclosing and relying on discussions regarding their misuse of CCMC's provider number. These discussions, referred to throughout the Complaint, gloss over the real relief the Debtors seek: a retroactive adjudication under Medicare law that the Pennsylvania ASC/Imaging Sites qualify as hospital-based outpatient facilities that may have entitled them to use CCMC's provider number after CCMC was no longer operating as a hospital. Without this administrative relief (and the reinstatement of CCMC's provider agreement), the Debtors cannot bill Medicare for services provided by the Pennsylvania ASC/Imaging Sites after CCMC closed—a risk that the Debtors knowingly took when they chose not to seek a regulatory determination from CMS regarding their Pennsylvania ASC/Imaging Sites before closing CCMC.

Notwithstanding that the parties' counsel informally discussed the Debtors' self-inflicted billing predicament, CMS is still required to enforce Medicare law, including terminating providers who are no longer eligible for enrollment in the Medicare program. CMS' decision to terminate a Medicare provider agreement (and determine whether a facility qualifies as a hospital-based outpatient facility) is under the exclusive jurisdiction of the Secretary of HHS until the Debtors exhaust their administrative remedies. Therefore, this Court has no jurisdiction to declare that CMS cannot terminate a provider for failing to comply with federal law and regulations. Nor can this Court adjudicate that the Pennsylvania ASC/Imaging Sites are hospital-based outpatient facilities entitled to retroactively bill Medicare (which billings would represent any alleged damages in this case).

Thus, regardless of whether Plaintiffs' allegations are accurate or even relevant, Plaintiffs are not entitled to judicial review of CMS' termination decision—a decision upon which all requests for relief in the Complaint ultimately rely upon. Nonetheless, even if this Court did have

2

jurisdiction over the relief sought, CMS' decision to terminate CCMC as a Medicare provider was neither a violation of the automatic stay nor a discriminatory act by CMS based on the facts presented in the Complaint. Accordingly, this Court must dismiss the Complaint for lack of subject matter jurisdiction and for failure to state any claims upon which relief can be granted.

## STANDARDS OF REVIEW

1.     The relevant parts of Rule 12(b) of the Federal Rules of Civil Procedure apply to bankruptcy adversary proceedings pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Dismissal of a complaint is appropriate under Bankruptcy Rule 7012(b)(1) when the plaintiff fails to establish jurisdiction. "The party invoking the court's bankruptcy jurisdiction has the burden of proving that jurisdiction exists." *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 2006 WL 8447802, *2 (S.D. Tex. Nov. 11, 2006). A court accepts well-pleaded factual allegations as true but is not bound to accept true "any unsupported statements [that] are merely legal conclusions masquerading as facts." *Travis v. City of Grand Prairie*, 2015 WL 13002069, at *4 (N.D. Tex. Aug. 6, 2015). The Court also may consider additional "undisputed facts evidenced in the record . . . plus the court's resolution of disputed facts" bearing on jurisdiction. *In re S. Recycling, L.L.C.,* 982 F.3d 374, 379 (5th Cir. 2020).

2.     Bankruptcy Rule 7012(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. A complaint survives a motion to dismiss under Rule 12(b)(6) only if it contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). The complaint must state the "grounds" for the alleged entitlement to relief, rather than a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*,

3

550 U.S. 544, 545 (2007). Courts routinely "strike allegations from complaints that detail

settlement negotiations within the ambit of Rule 408 [of Federal Rules of Evidence]" pursuant to

Rule 12(f). *Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex. 2006).

3.      Further, a court may consider documents attached to a motion to dismiss without

converting the motion to a motion for summary judgment when they are referenced in the

complaint and central to the plaintiff's claims. *See Causey v. Sewell Cadillac–Chevrolet, Inc.,* 394

F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are

considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to her claim."; *Maloney Gaming Mgmt., LLC v. St. Tammany Parish,* 456 F. App'x 336, 341 (5th

Cir. 2011) ("District court could consider items attached to defendant parish's motion to dismiss

without converting motion into one for summary judgment.").

## STATUTORY AND REGULATORY FRAMEWORK

### I.      Pertinent Statutes and Regulations Regarding the Medicare Program

4.      The commonly known "Medicare Program" is a federally funded program of

health insurance for the aged, the disabled, and persons suffering from end stage renal disease. 42

U.S.C. § 1395, *et seq*., (the "Medicare Act"). Congress has charged the Secretary of HHS with the

responsibility for administering the Medicare Program and authorized the Secretary to issue

regulations and interpretive rules implementing the statute. *See, e.g.*, 42 U.S.C. §§ 405(a),

1395hh(a), and 1395ii. The Secretary has delegated these responsibilities to CMS. *See* 55 Fed.

Reg. 9363 (March 13, 1990) and 66 Fed. Reg. 35437-03 (July 5, 2001).

5.      To receive payment for covered Medicare items or services, a provider must be

enrolled in the Medicare program. 42 C.F.R. § 424.505. To enroll, a provider must enter and sign

4

a provider agreement and meet the requirements of that agreement as part of the process to obtain

Medicare billing privileges. 42 C.F.R. § 424.510. Similarly, to maintain enrollment in the

Medicare program, a provider must continue to comply with Title XVIII of the Medicare Act and

the applicable Medicare regulations. 42 C.F.R. §§ 424.500, 424.516. A hospital may request to

participate in the Medicare program, but must meet the conditions of participation, including the

statutory definition of a "hospital." *Id.* at §§ 488.3(a), 489.10(a); 42 C.F.R. Part 482. "Hospital" is

an institution that "is ***primarily engaged in providing*** . . . ***inpatients***" services. 42 U.S.C. §

1395x(e) (emphasis added). Hospitals participating in Medicare are defined as "providers" for

Medicare program purposes. 42 U.S.C. § 1395x(u); 42 C.F.R. §§ 400.202 (defining a "provider").

**II.    CMS' Statutory Authority to Terminate Medicare Provider Agreements**

6.    42 U.S.C. § 1395cc(b)(2), as well as 42 C.F.R. § 489.53, authorize CMS to

terminate a provider agreement when CMS finds that a provider is out of compliance with federal

requirements. Specifically, the Medicare Act and regulations provide three avenues for

terminating a provider agreement: (i) involuntary termination by CMS (42 C.F.R. § 489.53); (ii)

involuntary termination by the HHS Office of Inspector General (42 C.F.R. § 489.54); or (iii)

voluntary termination by the provider (42 C.F.R. § 489.52). *See also* 42 U.S.C. § 1395cc(b)

("Termination or Nonrenewal of Agreements"). An involuntary termination is an "initial

determination" subject to administrative appeal rights. *Id.* §§ 489.53(e), 498.3(b)(8); 42 U.S.C. §

1395ff(b) (providing administrative appeal rights for "initial determinations"). The Secretary may

terminate a provider upon such reasonable notice to the provider. *See* 42 U.S.C. § 1395cc(b)(2)

("The Secretary may refuse to enter into an agreement under this section or, upon such reasonable

notice to the provider and the public as may be specified in regulations, may refuse to renew or

*may terminate such an agreement*.") (emphasis added). A failure to meet the definition of a

"hospital" as defined under 42 U.S.C. § 1395x(e) is one of the specified bases for which CMS

may terminate a provider agreement. *See* 42 U.S.C. § 1395cc(b)(2)(B) (stating CMS can terminate

a provider agreement if it "has determined that the provider fails substantially to meet the

applicable provisions of section 1395x of this title[.]").

## III.   Medicare Administrative and Judicial Review

7.      As noted by one court, the Medicare Act provides a highly "reticulated statutory

scheme, which carefully details the forum and limits of review" of all claims arising under

Medicare. *Row 1 Inc. v. Becerra*, 92 F.4th 1138, 1140 (D.C. Cir. 2024). The heart of that scheme

is section 405 of the Social Security Act, which outlines a structure for administrative appeals and

reserves jurisdiction to HHS to consider them.[3]

8.      Section 405(h) channels disputes arising under the Medicare Act into the

administrative review process and restricts judicial review until administrative review is complete.

Section 405(h)'s second sentence explicitly commands: "No findings of fact or decision of the

Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental

agency except as [stated in § 405(g)]." 42 U.S.C. § 405(h). Section 405(g), in turn, provides that

judicial review may be obtained only after a claimant receives a "final decision of" the Secretary.

42 U.S.C. § 405(g). Pursuing relief through the administrative scheme is therefore the exclusive

route to judicial review for claims arising under the Medicare Act. *See Shalala v. Illinois Council

on Long Term Care, Inc.,* 529 U.S. 1, 12–14 (2000); *In re St. Johns Home Health Agency, Inc.,*

173 B.R. 238, 242–43 (Bankr. S.D. Fla. 1994) ("The second sentence of § 405(h) requires that

---

[3] The Medicare Act incorporates operative provisions of section 405 of the Social Security Act, including sections
405(g) and (h) discussed below, through 42 U.S.C. §§ 1395ff and 1395ii.

administrative appeal processes be exhausted before this Court or any other tribunal may review a
finding or decision of the Secretary.").

9.      The Medicare Act and its governing regulations provide the exclusive path for
aggrieved parties to challenge CMS' decision before eventually permitting judicial review under
sections 405(g) and (h). If a provider receives an initial determination by CMS, such as
termination of a Medicare provider agreement, and is dissatisfied with CMS' decision, the
provider must first seek administrative review before receiving "judicial review of the Secretary's
final decision." 42 U.S.C. § 1395cc(h)(1)(A) ("[A]n institution . . . dissatisfied . . . shall be
entitled to . . . judicial review of the Secretary's final decision after such hearing as is provided in
section 405(g) of this title.").

## RELEVANT STATEMENT OF FACTS

10.      On March 6, 2025, the Court held a status conference regarding the potential
closure of their Pennsylvania Hospitals during which the Court expressed relief that the Debtors
were planning to comply with the regulatory requirements in closing the hospitals. *See* March 6,
2025, Tr., Docket No. 916 at 17:20-23, 25 and 18:1-2 ("Okay. And I'm glad you said that,
because my understanding has always been there's a regulatory requirement that hospitals like
these, they have a closure plan already. . . . And there's nothing about the bankruptcy process
that's going to override that. There will have to an appropriate closure plan.") (attached hereto as
**Exhibit A** at 18-19). Later that same day, the Debtors filed a motion to close the Pennsylvania
Hospitals representing to the Court that they will "[s]ubmit [an] Application to [Medicare
Administrative Contractor] *to voluntarily terminate Medicare enrollment*" for CCMC "[u]pon
completion of emergency department closure[.]" Docket No. 882, at ¶ 32 (emphasis added).

7

11.     On April 23, 2025, the Court entered an order approving the closure of the

Pennsylvania Hospitals [Docket No. 1613] (the "Closure Order"). CCMC "ceased providing

inpatient services as of May 2, 2025." Compl. at ¶ 21. Suzanne A. Koenig, the patient care

ombudsman appointed in these cases, also confirmed that the inpatient and emergency department

service line for CCMC "officially closed at 7:00 a.m. (prevailing Eastern Time) on May 1, 2025."

Docket No. 2151, Exh. C.

12.     CCMC remains permanently closed and through July, the front page of the

hospital's website directly led to the following statement:

> ***As of April 30th, 2025, our hospital's emergency room will no longer be seeing
> new patients. In addition, our physician offices will be closed to all patient visits
> after close of business on Friday, May 2nd, 2025.***

Crozer-Chester Medical Center Website, https://www.crozerhealth.org/globalassets/crozer-
patient-letter.pdf (last visited on July 30, 2025) (attached hereto as **Exhibit B** at 57-59).

13.     After CCMC "ceased providing inpatient services on May 2, 2025," Compl. at ¶

36, the Debtors– instead of voluntarily terminating CCMC's Medicare enrollment as they

previously represented to the Court that they would do – continued operating their Pennsylvania

ASC/Imaging Sites and billing Medicare as "provider-based" hospital outpatient departments

using CCMC's unique Medicare provider number as if CMCC had never closed.[4] *See* Compl. at ¶

19 (stating the Pennsylvania ASC/Imaging Sites "are currently operated and billed as hospital

outpatient departments"); *id.* at ¶ 41 (admitting that they continued to use CCMC's Medicare

---

[4] A "provider-based entity" means a provider of health care services . . . that is either created by, or acquired by,
a main provider for the purpose of furnishing health care services of a different type from those of the main
provider under the ownership and administrative and financial control of the main provider . . ." 42 C.F.R. §
413.65(a)(2). Importantly, "all final determinations as to whether particular facilities or organizations are provider-
based are to be made by [CMS]." *Id.* Debtors submitted a request that CMS determine that their outpatient facilities
be deemed provider-based entities on July 7, 2025, *see supra* ¶ 16, over two months after closing CMCC.

8

billing number until at least until June 3, 2025, and then allegedly imposed a "voluntary hold on

such claims.").

14.      On or about May 29, 2025, after disclosing that the Pennsylvania ASC/Imaging

Sites were using CCMC's provider number, the Debtors engaged CMS and informally requested

that CMS allow the Pennsylvania ASC/Imaging Sites to use CCMC's provider number, "thereby

permitting these facilities to bill and collect" from Medicare as if they were hospital-based

outpatient departments. Compl. at ¶¶ 33, 34.

15.      Pursuant to the Medicare Act, CMS gave notice on June 6, 2025, to the Debtors

that CCMC's Medicare provider agreement was terminated effective June 21, 2025, because CMS

determined that CCMC was no longer providing inpatient services and therefore no longer

eligible to participate in Medicare as a "hospital." *See* Compl.¶36; **Exhibit C** at 61-64, *CMS*

*Notification of Termination* (the "Termination Notice").

16.      On July 7, 2025, CCMC initiated the first level of administrative appeal of CMS'

termination decision requesting a hearing before an administrative law judge to reconsider CMS's

termination decision. *See* July 7, 2025 Request for Hearing to Departmental Appeals Board

(attached hereto as **Exhibit D** at 66-74). In its appeal, the Debtors argue that the Pennsylvania

ASC/Imaging Sites should qualify as provider-based outpatient departments. *See id.*, at 69-71.

## ARGUMENT

I.      **Count I Must Be Dismissed Because the Court Lacks Subject Matter Jurisdiction to
Declare That CMS Unlawfully Issued the Termination Notice and the Debtors Have
No Claim that Medicare Receivables are Property of the Estates or that Terminating
CCMC's Provider Agreement Violated the Automatic Stay.**

17.      Count I of the Complaint, while somewhat convoluted, requests the Court enter

three separate declaratory judgments: (1) CMS cannot terminate CCMC's Medicare enrollment or

refuse to process post-petition Medicare reimbursement claims submitted by the Pennsylvania

ASC/Imaging Sites; (2) CMS' termination of the Medicare provider agreement and any

withholding of Medicare reimbursement claims submitted by the Pennsylvania ASC/Imaging

Sites violate the automatic stay under § 362(a); and (3) Medicare reimbursement claims constitute

a property of the estates under § 541(a). *See* Compl. at ¶ 50. As a general matter, while a

declaratory relief is "a matter of [bankruptcy] court discretion," *Torch Inc. v. LeBlanc*, 947 F.2d

193, 194 (5th Cir. 1991), a plaintiff must demonstrate that they are "likely to suffer *future* injury."

*Ingle v. Butler*, No. 2:24-CV-140-Z-BR, 2025 WL 1184657, at *7 (N.D. Tex. Apr. 1, 2025);

*Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("[D]eclaratory relief cannot conceivably

remedy any past wrong.") (internal citation omitted). Where the declaratory relief is premised on

past acts, a plaintiff must establish "either continuing harm or a real and immediate threat of

repeated injury in the future." *Ingle*, 2025 WL 1184657, at *7.

18.     Here, Plaintiffs ask the Court to declare that CMS "may not terminate CCMC's

Medicare enrollment or refuse to accept and process Medicare [claims] after the Petition Date."

Compl. at ¶ 50. But, as Plaintiffs concede, CMS already terminated CCMC's Medicare provider

agreement as of June 21, 2025. *See* Compl. at ¶ 48. Plaintiffs also admit that "the Crozer Debtors

placed a hold, effective as of June 3, 2025, on new Medicare and Medicaid claims for services

furnished after May 1, 2025 at the Pennsylvania ASC/Imaging Sites." Compl. at ¶ 34. Plaintiffs

make no allegations that CMS failed to pay any submitted Medicare claims and cannot seek relief

of CMS' alleged failure to "accept and process" claims that they have yet to even submit to CMS

for review and processing. Thus, Plaintiffs have not "pleaded facts showing a continuing harm or

immediate threat of repeated harm." *Ingle*, at *7.

19.    Further, the request for declaratory relief under Count I must be dismissed because

such relief is inherently duplicative of Counts II and III (damages for violating §§ 362(a) and

525(a), respectively). *See In re Trevino*, 615 B.R. 108, 144 (Bankr. S.D. Tex. 2020) ("[D]ismissal

of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is

duplicative of other causes of action."); *8300 Buckeye Delaware LLC v. UPS Supply Chain Sols.,

Inc.*, 2023 WL 7273712, at *13 (N.D. Tex. Sept. 17, 2023) ("Courts in the Fifth Circuit have

declined to adjudicate declaratory judgment actions when the declaration seeks the same relief as

other causes of action in the claim."). Because the Court's adjudication of the alleged violations of

the automatic stay and discrimination will necessarily determine the relief sought in Count I of the

Complaint, the declaratory judgment claims are duplicative and therefore "unavailable as a matter

of law." *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL

4784717, at *7 (N.D. Tex. Aug. 18, 2020) (internal citation omitted).

20.    Even, *assuming arguendo*, that declaratory relief is allowed, each of the Plaintiffs'

requests, as explained below, fail for lack of subject matter jurisdiction and for failing to state a

claim upon which the Court can grant relief.

A.    The Court Lacks Subject Matter Jurisdiction to Retroactively Declare that CMS
     Could Not Terminate CCMC's Medicare Provider Agreement.

21.    Plaintiffs specifically request the Court declare that CMS "may not terminate

CCMC's Medicare enrollment or refuse to accept and process [claims for] Medicare

Reimbursements after the Petition Date." Compl. at ¶ 50. While Plaintiffs' requested relief is

framed to enjoin CMS from taking future action, CCMC's enrollment (and CMS' ability to

process claims) was terminated three weeks *before* the Plaintiffs filed their Complaint.[5] *Id.*

Plaintiffs are therefore not entitled to a declaratory relief for this alleged past wrong.

22.    Regardless, a challenge to CMS' administrative decision to terminate a Medicare

provider agreement is a dispute that is necessarily and primarily about "entitlement to benefits"

under the Medicare Act. Section 1395cc(h)(1)(A) of Title 42 expressly grants a provider the right

to receive administrative and judicial review of the Secretary's decision to terminate a provider's

Medicare enrollment "to the same extent as is provided in section 405(b) of this title, and to

judicial review of the Secretary's final decision after such hearing ***as is provided in section 405(g)***

***of this title***." (emphasis added). In turn, § 405(g) of Title 42 permits review of the Secretary's

"final decision" by filing a civil action within sixty days after the Secretary's decision notice.

Notably, the next section of the statute, section 405(h), mandates that section 405(g) is the

exclusive vehicle for a court's jurisdiction:

> [1] The findings and decision of the [Secretary] after a hearing shall be binding upon
> all individuals who were parties to such hearing. [2] ***No findings of fact or decision***
> ***of the Secretary shall be reviewed by any person, tribunal, or governmental agency***
> ***except as herein provided.*** [3] No action against the United States, the [Secretary],
> or any officer or employee thereof shall be brought under section 1331 or 1346 of
> Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (emphasis and numerals added). The phrase "herein provided", as it appears in

§ 405(h), indisputably refers to § 405(g). *See Smith v. Berryhill,* 587 U.S. 471, 475 (2019)

("Congress made clear that review would be available only 'as herein provided'—that is, only

under the terms of § 405(g)."); *see also, Weinberger v. Salfi,* 422 U.S. 749, 759 (1975) ("Even if

---

[5] Plaintiffs' related request that the Court declare that CMS cannot "refuse to accept and process" Medicare claims
after the Petition Date completely fails as the Plaintiffs never allege, assert or otherwise indicate that CMS has
refused to process claims submitted after the Petition Date. The only potential claims raised in the Complaint that
CMS could refuse to process are claims by the Pennsylvania ASC/Imaging Sites that Plaintiffs repeatedly assert they
never submitted to CMS. *See* Compl. at ¶¶ 34 and 41.

12

the denial is nonfinal, it is still a 'decision of the Secretary' which, by virtue of the second

sentence of [§] 405(h), may not be reviewed save pursuant to [§] 405(g).").

23.    As noted by the Fifth Circuit, § 405(h)'s second sentence does two things: "First, it

channels claims challenging a certain type of agency decision . . . into § 405(g). Second, it ensures

that § 405(g) is the *sole jurisdictional avenue* for the channeled claims." *In re Benjamin,* 932 F.3d

293, 300 (5th Cir. 2019) (emphasis added). In other words, the second sentence imposes an

*independent* jurisdictional bar on courts, including bankruptcy courts, for claims and challenges

that section 405(g) requires to be channeled through agency review. *Id.* The "types of agency

decisions" channeled to the administrative process, the Fifth Circuit continued, were those where

a disputed decision is "primarily about . . . entitlement to benefits." *Id.* at 302. If so, the dispute

would be channeled into administrative review by section 405(g), with section 405(h) limiting the

federal courts' role to reviewing the agency's final decision. *Id.* at 301.

24.    The statutory and regulatory provisions governing the termination of CCMC's

Medicare provider agreement relate to entitlement to Medicare participation (and therefore

entitlement to Medicare payments). Without a provider agreement, CCMC does not have

Medicare billing privileges and therefore cannot submit claims to CMS for reimbursement. *See* 42

U.S.C. § 1395cc(a)(1); 42 C.F.R. § 424.505. Therefore, under *Benjamin*, Plaintiffs' request for "a

declaration that Defendants may not terminate CCMC's Medicare enrollment or refuse to accept

and process Medicare Reimbursement after the Petition Date," Compl. at ¶ 50, is "unquestionably

administrative in nature" and a "claim for administrative entitlement." *Affiliated Professional

Home Health Care Agency v. Shalala,* 164 F.3d 282, 285-86 (5th Cir. 1999); *see Timberlawn

Mental Health System v. Burwell*, 2015 WL 4868842, at *3-4 (N.D. Tex. 2015) (denying a

13

hospital-plaintiff's a motion for temporary restraining order to prohibit HHS from terminating its Medicare provider agreement because the plaintiff's request to "continue its participation in the Medicare program pending an administrative appeal of CMS' termination decision" falls squarely into the types of issues barred under section 405(h)); *Dallas Healthcare, Inc. v. Health and Human Servs. Com'n*, 921 F.Supp. 426, 429 (N.D. Tex. 1996) ("[T]he issue of whether TDHS applied the proper standard goes directly to Dallas Healthcare's claim of entitlement and is not separate or collateral to the issue being considered on appeal by the Secretary."). Because Plaintiffs have failed to fully exhaust their administrative remedies regarding CMS' termination decision, which is the underlying crux for all the relief requested in Count I, the Court has no jurisdiction to declare that CCMC's provider agreement should be retroactively reinstated or make any other declarations that rely on CMS' termination decision. Accordingly, Count I of the Complaint must be dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 1334.

B.    Plaintiffs' Request for a Declaration That "Medicare Reimbursements" Constitute Property of the Estates Under 11 U.S.C. § 541 Is Barred by Sovereign Immunity.

25.    "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). Waivers of sovereign immunity may not be implied. *United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992). Any governmental waiver of sovereign immunity must be unequivocal, *Franconia Assocs. v. U.S.*, 536 U.S. 129, 141 (2002), and such waivers are strictly construed, *Lane v. Pena*, 518 U.S. 187, 192 (1996). The plaintiff bears the burden to demonstrate that sovereign immunity has been waived. *See Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (in suit against the United States, "Plaintiff[s] bear[ ] the burden of showing Congress's unequivocal waiver of sovereign immunity."). If a plaintiff fails to establish a

14

waiver of sovereign immunity, the Court lacks subject matter jurisdiction over the action and any

of its claims for relief. *United States v. Testan*, 424 U.S. 392, 399 (1976).

26.     Here, Plaintiffs seek a declaration that "the Crozer Debtors' right to submit claims

and receive Medicare Reimbursements is property of the estates under 11 U.S.C. § 541(a)."

Compl. at ¶ 50. Such requested relief, however, is barred by sovereign immunity. Section

106(a)(1) of the Bankruptcy Code enumerates 59 sections of the Bankruptcy Code that Congress

elected to abrogate the United States' sovereign immunity. *See* 11 U.S.C. § 106(a)(1). Congress

excluded, however, section 541 of the Bankruptcy Code from the abrogation list allowing

government defendants such as CMS to assert sovereign immunity in proceedings brought by the

estate. *See* 140 Cong. Rec. H10,766 (daily ed. Oct. 4, 1994), *reprinted in* ¶ 106 ("This allows the

assertion of bankruptcy causes of action, but specifically excludes causes of action belonging to

the debtor that become property of the estate under section 541."). Because Congress did not

expressly and plainly waive sovereign immunity for claims under § 541 of the Bankruptcy Code,

the Court should dismiss Count I, seeking a declaration that CCMC's "right to submit claims and

receive Medicare Reimbursements," constitutes property of the estates. Compl. at ¶ 50.

     C.    <u>Plaintiffs' Request for a Declaration That "Medicare Reimbursements" Constitute
         Property of the Estates Under Section 541 of the Bankruptcy Code Must Be
         Denied for Failure to State a Claim</u>.

27.     Even if the Court finds that the above-described sovereign immunity abrogation

does not bar the adjudication of the requested relief, the Complaint demonstrably lacks facts

supporting a right to relief for a declaration that "Medicare Reimbursements" constitute property

of the estates. The bankruptcy estate generally includes "all legal or equitable interests of the

debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Congress

explained that "[t]hough this paragraph will include . . . claims by the debtor against others, it is

not intended to expand the debtor's rights against others more than they exist at the

commencement of the case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367-68 (1977). In other

words, the commencement of the bankruptcy case and automatic stay do not afford the Debtors

greater property interests than they had pre-petition. *See Mission Product Holdings, Inc. v.

Tempnology, LLC,* 587 U.S. 370, 381 (2019) (acknowledging "general bankruptcy rule" that

"[t]he estate cannot possess anything more than the debtor itself did outside bankruptcy.").

28.     That principle is fatal to Plaintiffs' contentions. The nature and extent of property

rights in bankruptcy are determined by the underlying substantive law. *Raleigh v. Illinois Dep't of

Revenue*, 530 U.S. 15, 20 (2000). The underlying federal law applicable here are clear that no

provider has any property interest, legitimate expectation, or statutory entitlement to participate in

Medicare without meeting fundamental conditions on program eligibility. *See Sahara Health

Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 572 (S.D. Tex. 2018), *aff'd*, 975 F.3d 523 (5th Cir. 2020)

("Plaintiff's participation in the Medicare program and related appeals process does not equate to

having a property interest in its reimbursement claims."). Only "providers of services" meeting

statutory and regulatory conditions of participation are qualified to enter into a provider

agreement with CMS and to receive payment for Medicare services. 42 U.S.C. §1395cc(a)(1).

And every provider's interests in participating in Medicare are taken subject to the CMS' on-

going, statutory authority to terminate the provider agreement if CMS determines that the

provider "fails to comply substantially with the provisions of the agreement" or "with the

provisions of this [Medicare] title and regulations thereunder." 42 U.S.C. § 1395cc(b)(2)(A). The

Debtors, in sum, do not have a cognizable property interest in participating in Medicare without

16

meeting Medicare's conditions of participation. *See e.g., Shah v. Azar*, 920 F.3d 987, 997-98 (5th

Cir. 2019) ("Because health care providers are not the intended beneficiaries of the federal health

care programs . . . they therefore do not have a property interest in continued participation or

reimbursement."). Because the right to participate in the Medicare Program does not constitute a

property interest, Plaintiffs' request for a declaration that they are entitled to submit claims and

receive Medicare reimbursements under § 541(a), must be dismissed for failure to state a claim.

> D.    <u>Plaintiffs' Request for a Declaration that CMS Violated the Automatic Stay for
> Allegedly Attempting to Recover Unbilled Claims Must Be Denied Because 11
> U.S.C. § 362 Cannot Be Used to Liquidate Disputed Claims</u>.

29.    The "Crozer Debtors' right to submit claims and receive Medicare

Reimbursements" is currently in dispute. Compl. at ¶ 50. Section 362 of the Bankruptcy Code,

however, cannot be used to adjudicate claims for property or payments that are in dispute. As one

bankruptcy court aptly noted, the "automatic stay, like the turnover provision of the Bankruptcy

Code, 11 U.S.C. § 542, cannot be used as a vehicle 'to liquidate contract disputes or otherwise

demand assets whose title is in dispute.'" *In re Yelverton*, No. 09-00414, 2014 WL 7141938, at *9

(Bankr. D.D.C. Dec. 12, 2014), *subsequently aff'd sub nom. United States ex rel. Yelverton v.

Fed. Ins. Co.*, 831 F.3d 585 (D.C. Cir. 2016) (quoting *United States v. Inslaw, Inc.*, 932 F.2d

1467, 1472 (D.C. Cir. 1991)). A contrary reading "would turn every act of the possessor that

implicitly asserts his title over disputed property into a violation of § 362(a)," and "give the

bankruptcy court jurisdiction over all such disputes[.]" *Inslaw*, 932 F.2d at 1473.

30.    Applying this reasoning here, Congress certainly did not intend the Medicare Trust

Fund to be sequestered wholesale by CCMC's bankruptcy estate without any regard for a

carefully-crafted administrative review process required under the Medicare Act. The "Medicare

17

Reimbursements" that the Debtors have yet to bill for but allege CMS is "withholding," Compl. at

¶ 50, are in dispute, as evidenced by the pending administrative appeal commenced by CCMC.

Therefore, unless and until the Debtors obtain a favorable decision regarding their request to

retroactively use CCMC's provider number through the Medicare administrative process, any

"Medicare Reimbursements" are not property of the estates (and therefore CMS cannot violate the

automatic stay). Because the Debtors are not entitled to payment for claims that have yet to be

submitted and are in dispute, a request for declaration that CMS violated the automatic stay must

be denied. *See In re Orthotic Center, Inc*., 193 B.R. 832, 834 (N.D. Ohio 1996) ("the Secretary's

suspension of [Medicare] payments was not equivalent to the seizure of property of the estate

because the right to receive payments is in dispute, and the payments are not the property of the

debtor until the dispute is decided in its favor.").

      E.    <u>Plaintiffs' Request for a Declaration That CMS Violated the Automatic Stay for
Terminating CCMC's Medicare Provider Agreement Must Be Denied for Failure
to State a Claim Because the Termination Was an Exercise of CMS' Police and
Regulatory Power Under Section 362(b)(4) of the Bankruptcy Code.</u>

    31.    Plaintiffs allege that CMS' termination of CCMC's Medicare enrollment is a

violation of the automatic stay and ask the Court to declare that terminating CCMC's Medicare

provider agreement is not excepted under § 362(b)(4). *See* Compl. at ¶¶ 48, 50. As discussed *infra*

Section III, CMS' termination of CCMC's Medicare enrollment related solely to its closure as a

hospital providing inpatient services. "Case law makes clear that agencies qualify for the police

and regulatory exception when they bring actions primarily intended to bring entities into

compliance with applicable regulations[.]" *In re FiberTower Network Servs. Corp.*, 482 B.R. 169,

180 (Bankr. N.D. Tex. 2012). In *FiberTower*, the court has interpreted § 362(b)(4) extremely

broadly and held that the exception "allows a 'governmental unit' to bring or continue actions

against a debtor to prevent or stop violations of law affecting matters of public health, safety, *or welfare.*" *Id.* (emphasis original); *Parkview Adventist Med. Ctr. v. United States on behalf of Dep't of Health & Hum. Servs.*, 842 F.3d 757, 764 (1st Cir. 2016) (finding that CMS' termination of a hospital's Medicare provider agreement did not violate the automatic stay because it was an exercise of regulatory power under the Medicare statute).

32.    Plaintiffs ignore that CMS "does not operate Medicare, ultimately, in [its] own interest." *In re Tri Cnty. Home Health Servs., Inc.*, 230 B.R. 106, 113 (Bankr. W.D. Tenn. 1999). Rather, CMS bears regulatory responsibility for "effective[ly] managing the public funds entrusted to the Medicare program," and it "has a critical interest in maintaining the integrity of the Medicare program for the benefit of all, including the taxpaying public." *Id.* (citation omitted); *see also In re Vitalsigns Homecare, Inc.*, 396 B.R. 232, 239-40 (Bankr. D. Mass. 2008) ("Protecting the public fisc" is fundamental to Medicare's statutory scheme). Because CCMC is no longer a "hospital," the Debtors' receipt of payments from billing the Pennsylvania ASC/Imaging Sites as hospital-based outpatient departments pursuant to CCMC's terminated Medicare provider number compromises the integrity and management of the public funds administered by CMS. CMS thus acted well within its "generally applicable regulatory laws" to ensure that Medicare funds meant for hospitals which primarily service inpatients were not billed for by facilities which solely service outpatients.

33.    Further, conditions to participate in the Medicare program—such as providing adequate nursing services, the credentialing and supervision of medical staff, assurance of a safe environment, and adequate infection control—are specifically intended to protect public health and safety and plainly further a vital public interest. *See* 42 U.S.C. § 482.1. Plaintiffs admit they

unilaterally "decided to continue services at the Pennsylvania ACS/Imaging Sites" as hospital
outpatient departments, Compl. at ¶ 28, without certifying or complying that these sites meet all
necessary regulatory conditions. As explained above, CMS – not the facility – determines whether
the facility qualifies as hospital-based facility. *See supra*, fn.4.

34.    Where, as here, CMS' regulatory actions intended to bring CCMC into compliance
with federal healthcare law, CMS' termination falls squarely within the agency's police and
regulatory powers. No more obvious exercise of the government's power to "protect the health,
safety, and welfare of the public" can be imagined than CMS' administrative decision here.
*FiberTower*, 482 B.R. at 180. Any adverse consequences or alleged harm described in the
Complaint is entirely self-inflicted, resulting from Plaintiffs' failure to comply with federal law.
As such, Plaintiffs' requested declaration that terminating CCMC's Medicare provider agreement
is not excepted under 11 U.S.C. § 362(b)(4) must be denied.

F.    <u>Plaintiffs' Request for a Declaration that CMS Violated the Automatic Stay for
Allegedly Demanding Payment of Prepetition CMS Obligations Must Be Denied
for Failure to State Claim Because Medicare Recoupment Is Not Subject to 11
U.S.C. § 362</u>.

35.    Plaintiffs' contention that CMS violated the automatic stay because it made "post-
petition demands for payment for pre-petition CMS Obligations," Compl. at ¶ 54, even if taken
true as alleged, fails to state a claim upon which relief can be granted. The Complaint defines
"CMS Obligations" as "prepetition debts of CCMC to CMS for . . . certain advance payments
received from CMS related to the COVID-19 pandemic[.]" Compl. at ¶ 32.[6] CMS has

---

[6] Further, this Court expressly authorized the Debtors to "pay and honor related prepetition obligations under the
Refund Programs" which included the CMS Obligations. *See* Docket No. 604. The Debtors acknowledged that they
are "subject to offsets or recoupments for reimbursement of overpayments or payments made . . . including payments
made in connection with extended repayment plans with the applicable federal or state agencies overseeing Medicare
and Medicaid." Docket No. 10, at ¶ 8. Plaintiffs' argument that CMS violated the stay by allegedly demanding court-

20

independent statutory and regulatory right to recoup Medicare overpayments and advances. *See* 42 U.S.C. § 1395g(a) and (f)(2)(C); 42 C.F.R. § 405.373(a) and 413.64(g). Courts, including the Fifth Circuit, have held with near unanimity that Medicare recoupment is not subject to the automatic stay. *See Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 530 (5th Cir. 2020) ("... Medicare recoupments are not subject to an automatic stay in bankruptcy."); *Mount Sinai Hosp. of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (5th Cir. 1975), *modified*, 522 F.2d 179 (5th Cir. 1975) (stating that the government has common law right to recoup from a hospital that received payments for unnecessary medical treatment); *Med-Cert Home Care, LLC v. Azar*, 365 F. Supp. 3d 742, 754-55 (N.D. Tex. 2019) (holding that neither the discharge injunction nor the automatic stay apply to Medicare recoupment); *see also In re AHN Homecare, LLC*, 222 B.R. 804, 812 (Bankr. N.D. Tex. 1998) (finding that the Medicare agreement constituted one transaction for purposes of recoupment and that HHS did not violate automatic stay in recouping from overpayments across cost years).

36.     Instead of recognizing CMS' recoupment rights, Plaintiffs attempt to catch the Court's attention by mischaracterizing any alleged Medicare recoupment as "garnish[ment]," Compl. at ¶ 5. Stating that CMS "attempt[ed] to garnish" is a legal conclusion, however, and must be disregarded. *Id.*; *see Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiffs have not alleged *any* facts or legal elements to support their claim for unlawful garnishment. *See generally* Compl. As the Fifth Circuit explained, a garnishment requires a "writ

---

authorized payments of the CMS Obligations is therefore untenable.

of garnishment" served to the "garnishee." *See FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 589 (5th Cir. 2006).

37.     Plaintiffs offer no allegations that CMS served a writ of garnishment to the Debtors. Not using the word "recoupment" or "recoup" once in the Complaint – whether intentional or unintentional – and instead using eye-catching language such as "garnish[ment]" and "demands" suggests that Plaintiffs know that, as a matter of law, Medicare recoupment is not subject to the automatic stay. Accordingly, the Plaintiffs' allegations that CMS violated the automatic stay by "garnish[ment]" and "demands" to collect pre-petition liabilities do not (and cannot) meet the *Iqbal* and *Twombly* standards and must be dismissed for failure to state a claim.

## II.     Count II of the Complaint Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted Because Corporate Debtors Are Not Entitled to Damages Under 11 U.S.C. § 362(k).

38.     Plaintiffs' cursory request for "actual damages, including costs and attorneys' fees, in accordance with Section 362(k)" lacks any merit. Compl. at ¶ 57. Not only is there no violation of the automatic stay, but section 362(k)(1) of the Bankruptcy Code only permits damages for willful stay violations for "an individual." "Plainly, the statute here is referring only to human beings," rather than "corporations and other legal entities." *In re Chateaugay Corp.*, 920 F.2d 183, 184-85 (2d Cir. 1990) (applying former Section 362(h), now recodified at Section 362(k)(1)); *see also In re Roxwell Performance Drilling, LLC*, No. 13-50301-RLJ-11, 2014 WL 2800767, at *4 (Bankr. N.D. Tex. June 19, 2014) ("As Roxwell is not an individual, it may not recover damages under § 362(k)."); *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) ("As conceded by the parties here, the Debtor, as a corporation, may not recover damages under section 362(h)"); *In re Freemyer Indus. Pressure, Inc.*, 281 B.R. 262, 268

22

(Bankr. N.D. Tex. 2002) ("Though the case law is mixed, the better view is that section 362(h) may only be invoked by individuals. This Court, per Steven A. Felsenthal, J., has held that relief under section 362(h) is limited to individuals.") (internal citation omitted); *In re First RepublicBank Corp.*, 113 B.R. 277, 279 (Bankr. N.D. Tex. 1989) ("This court respectfully disagrees with those courts which have applied § 362(h) to corporations."). CCMC is not an "individual" capable of receiving damages for automatic stay violations. Accordingly, Plaintiffs' request in Count II for damages under Section 362(K) fails to state a claim for relief upon which relief may be granted and must be denied.

**III.    Count III Must Be Dismissed Because CMS' Termination of CCMC's Medicare Enrollment Was Not Discriminatory Under 11 U.S.C. § 525(a).**

39.    Plaintiffs seek "actual damages … in an amount to be proven at trial", stating that "termination of CCMC's Medicare enrollment and threats of monetary penalties are discriminatory acts taken solely because the Crozer Debtors are debtors under title 11[.]" Compl. at ¶¶ 60, 62. This mere recitation of § 525 is insufficient to show that Plaintiffs are entitled to damages under § 525. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (internal citation omitted).

40.    As explained earlier, any potential damages would arise from alleged claims related to services provided by the Pennsylvania ASC/Imaging Sites after CMCC closed. These alleged claims, and any potential amounts due, are solely within the exclusive jurisdiction of the Secretary to adjudicate. 42 U.S.C. § 405(h), (g); *Matter of Benjamin,* 932 F.3d 293, 300 (5th Cir. 2019). Moreover, under the plain language of the statute, the Court must dismiss Count III of the Complaint because the undisputed facts cannot support Plaintiffs' allegations that CMS

23

terminated CCMC's Medicare provider agreement "solely because" of CCMC's bankruptcy filing. 11 U.S.C. § 525(a) ("[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, . . . or other similar grant . . . *solely because* such bankrupt or debtor is or has been a debtor under this title. . . .") (emphasis added); *see e.g., Devon Enters., L.L.C. v. Arlington Indep. Sch. Dist.*, 541 F. App'x 439, 442 (5th Cir. 2013) (a violation under § 525(a) requires a showing that the government's "decision was made and that the filing of a bankruptcy was the *sole reason* for the decision.") (emphasis added). As the Supreme Court emphasizes, "Section 525 means nothing more or less" than that an entity's status as a debtor in bankruptcy "*must alone be the proximate cause* . . . [and] the act or event that triggers the agency's decision" in order to constitute proscribed conduct. *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 301-02 (2003) (emphasis added).

41.    A case from the First Circuit is particularly instructive here. In *Parkview Adventist Med. Ctr. v. Dep't of Health & Hum. Servs.*, 842 F.3d 757 (1st Cir. 2016), the First Circuit held that CMS' termination of a hospital's provider agreement did not violate 11 U.S.C. § 525(a), because there was "nothing in the termination decision that depended upon [the debtor's] insolvency or bankruptcy petition." *Id.* at 765. There, CMS issued a termination letter to the debtor-hospital stating that it was terminating the debtor's provider agreement because the debtor "had decided to close its inpatient facilities and thereby had ceased to qualify as a hospital under the Medicare statute." *Parkview Adventist*, 842 F.3d at 765. The court found that the "termination decision involved no forbidden discrimination based on insolvency." *Id.*

42.    Similarly, Plaintiffs acknowledge that CMS terminated CCMC's Medicare provider agreement because "CMS has determined that CCMC is not in compliance with the

24

applicable Medicare statutory and regulatory provisions[.]" Compl. at ¶ 36 (directly quoting the

Termination Notice). The reality is CMS terminated CCMC's Medicare provider agreement

because CCMC publicly admitted on its own website and in court filings that it was closing its

doors and would no longer operate as a hospital. The Debtors even represented that they

themselves would terminate CCMC's enrollment once it closed its emergency department. Thus,

CMS' termination had *nothing* to do with CCMC's bankruptcy filing, but *everything* to do with

CCMC's closure as a Medicare-provider hospital. Accordingly, there are no facts or allegations

that can support the notion that CMS terminated CCMC's Medicare provider agreement "solely

because" of its bankruptcy filing as required for a § 525(a) violation.

## <u>CONCLUSION</u>

Therefore, based on the foregoing, the United States respectfully requests that the Court

enter an order granting the Motion, dismissing all Counts in the Complaint, and granting the

United States such other and further relief as is just and proper.

Dated: August 19, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

*/s/ Jae Won Ha*
KIRK T. MANHARDT
MARY A. SCHMERGEL
JAE WON HA
United States Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 598-5383
Fax: (202) 514-9163
E-mail: jae.won.ha@usdoj.gov
*Attorneys for the United States*

25

## CERTIFICATE OF SERVICE

I certify that on August 19, 2025, a true and correct copy of the foregoing was served via electronic means through transmission facilities from the Court upon those parties authorized to participate and access the Electronic Filing System in the above-captioned case.

Dated: August 19, 2025                              */s/ Jae Won Ha*_____
                                                    JAE WON HA