# **EXHIBIT D**

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

July 7, 2025

**VIA ELECTRONIC FILING, E-MAIL AND CERTIFIED MAIL**
https://dab.efile.hhs.gov/

**Departmental Appeals Board's Electronic
Filing System ("DAB E-File")**

Department of Health & Human Services
Departmental Appeals Board, MS 6132
Director, Civil Remedies Division
330 Independence Avenue, S.W.
Cohen Building – Room G-644
Washington, D.C. 20201
(202) 565-9462

Re:   **Request for Hearing: Prospect CCMC LLC d/b/a Crozer-Chester Medical Center (CCMC); CMS Certification Number (CCN): 390180**

To Whom it May Concern:

Prospect CCMC LLC d/b/a Crozer-Chester Medical Center ("CCMC") hereby submits this request for hearing before an administrative law judge ("ALJ") of the Department of Health and Human Services ("HHS"), Departmental Appeals Board ("DAB") (hereinafter, "Request for Hearing"), to appeal the termination of CCMC's Medicare provider agreement by the Centers for Medicare & Medicaid Services ("CMS"), per the CMS Notification of Termination letter dated June 6, 2025 (the "Enrollment Termination"). As discussed in further detail below, CCMC was engaged in ongoing discussions with CMS regarding a mutually agreeable effective date for CCMC's voluntary termination of its Medicare enrollment in accordance with the court-approved sale process in connection with CCMC's petition for Chapter 11 bankruptcy when CMS abruptly issued the Enrollment Termination with an effective date of June 21, 2025. CCMC disagrees with CMS' determination that CCMC cannot continue to provide hospital outpatient services to Medicare patients for a limited period of time after it ceases providing inpatient services, especially where, as here, those hospital outpatient departments continue to hold valid, active licenses from the Pennsylvania Department of Health and continue to meet the requirements to bill Medicare as hospital outpatient departments. Moreover, the Enrollment Termination is inconsistent with CMS's own articulated policy to protect patients from disruptions in care due to where an alternative to termination of the hospital is feasible.

1.   **FACTUAL BACKGROUND**

   a.   **CCMC Outpatient Facilities**

**SheppardMullin**

Departmental Appeals Board's Electronic Filing System ("DAB E-File")
Department of Health & Human Services
July 7, 2025
Page 2

On January 11, 2025, Prospect Medical Holdings, Inc. and its debtor affiliates, including CCMC (collectively, "Debtors"), initiated voluntary bankruptcy filings under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Proceedings"). Although the Debtors, supported by their key constituents, took every effort to avoid closure of the Crozer-Chester Medical Center, that proved impossible. On May 2 2025, CCMC closed its inpatient services and emergency department.[1] CCMC bore the cost of maintaining the operations of five (5) hospital outpatient departments (the "HOPDs"), including three (3) ambulatory surgical centers ("ASCs"), and two (2) imaging facilities (the "Imaging Sites") (collectively, referred to as the "Outpatient Facilities") throughout the bankruptcy court's approved sale process for the assets of the Outpatient Facilities. As HOPDs, the Outpatient Facilities are licensed in accordance with Pennsylvania state law and enrolled in Medicare under the same Medicare provider agreement and CCN as the main facility providing inpatient services (the "Medicare Enrollment"). The Outpatient Facilities continue to be overseen and operated by CCMC pursuant to integrated financial, clinical, and administrative services that historically supported the main inpatient facility and all of its HOPDs.[2]

Despite the closure of inpatient services at CCMC, the Delaware County patient community continues to rely on CCMC for outpatient services, including scheduled procedures and imaging services. Since May 1, 2025, the Outpatient Facilities have continued to serve approximately 9,166 patients,[3] the majority of which (approximately 5,053) are enrolled in Medicare, Medicare Advantage, Medicaid, or Medicaid managed care. CCMC anticipates similar patient volumes through the month of July, including 4,816 patient procedures[4] which have been scheduled for weeks—including over 3,000 mammographies, which could lead to a significant impact on patient safety due to disease progression if patients are forced to seek care elsewhere and wait for scheduling availability to open up at another facility.

### b.  Pending Acquisition by ChristianaCare

On June 9, 2025, CCMC and ChristianaCare signed an Asset Purchase Agreement to sell assets of Outpatient Facilities to Christiana Care (the "Transaction"). The Transaction is anticipated to close no later than July 31, 2025 (and potentially sooner). Upon closing of the Transaction, ChristianaCare will assume control over the operations of the Outpatient Facilities. ChristianaCare is also in the process of enrolling the Outpatient Facilities as free-standing ASCs and independent diagnostic testing facilities ("IDTFs") under new Medicare supplier numbers. Those enrollment applications are currently pending before CMS.

---

[1] *See* Debtors' Emergency Motion for Entry of an Order (I) Approving the Closure of the Pennsylvania Hospitals; and (II) Granting Related Relief [Docket No. 882] (the "Closure Motion"); and Supplement [Docket 1574] filed in the cases styled, *In re Prospect Medical Holdings, Inc., et al.*, Case No. 25-80002 (Bankr. N.D. Tex. 2025).
[2] *See* 42 C.F.R. § 413.65.
[3] All-payor patient volume across all five (5) Outpatient Facility locations from May 1, 2025 to July 3, 2025.
[4] Patients scheduled from July 4, 2025 to July 31, 2025 (all payors).

**SheppardMullin**

Departmental Appeals Board's Electronic Filing System ("DAB E-File")
Department of Health & Human Services
July 7, 2025
Page 3

### c. The Enrollment Termination and Instant Appeal

The bankruptcy court's order approving and authorizing the Asset Purchase Agreement and Sale of the Outpatient Facilities (the "Sale Order") requires CCMC to continue to operate the Outpatient Facilities in accordance with customary practice during the sale process.[5] In accordance with the Sale Order and in light of the anticipated closing date of the pending Transaction, CCMC has been in discussions with CMS since May 29, 2025 regarding CCMC's voluntary termination of its Medicare Enrollment on a mutually agreeable date that aligns with Transaction closing date (the "Voluntary Termination") and a reduction in fee-for-service payments for the services furnished at the Outpatient Facilities in order to allow the Outpatient Facilities to continue serving Medicare patients until the Transaction closing date. Permitting CCMC to remain enrolled in the Medicare program for a short, three-month period between the date the hospital ceased providing inpatient services and the Transaction closing date would be consistent with CMS guidance allowing for voluntary termination effective date that is less than six (6) months in the future, where CMS must be "assured that it would not *unduly disrupt the services to the community* or otherwise interfere with the effective and efficient administration of the health insurance program."[6]

On June 6, 2025, counsel for CMS indicated that CMS would consider a Voluntary Termination effective date of the earlier of August 1 or the closing of the Transaction, provided that CCMC also agreed to a payment reduction of 38% for the ASCs and 63 % for the Imaging Sites. Despite the ongoing discussions related to the effective date of CCMC's Voluntary Termination, on the same date CCMC also received a Notification of Termination letter from CMS, stating that "[n]otwithstanding CCMC's representation that it would voluntarily terminate its Medicare enrollment, CMS has determined that CCMC is not in compliance with the applicable Medicare statutory and regulatory provisions," and that CMS would be terminating CCMC's Medicare provider agreement effective June 21, 2025. According to CMS, the termination of CCMC's provider agreement is based on a determination that CCMC no longer meets the statutory definition of a "hospital" in 42 U.S.C. § 1395x(e) because the facility ceased providing inpatient services on May 2, 2025. Notwithstanding that letter, counsel for CMS indicate that CMS remained open to a resolution that would avoid disruption to patient care and on June 11, 2025, represented that CMS was "moving as fast as possible" to reach a resolution, and "once we reach a settlement in principle," the parties should discuss logistics of implementation.

Prospect continued to engage in good faith settlement discussions, notwithstanding the Notification of Termination, in reliance on CMS's representations that a consensual resolution would be reached. More importantly, in reliance on CMS's representations, Prospect continued to provide services to the community. However, on July 1, 2025, after more than a month of

---

[5] *Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and Sale of the Pennsylvania ASC/Imaging Sites Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) the Assignment of Certain Permits; and (II) Granting Related Relief* [Docket No. 2412], Case No. 25-80002 (Bankr. N.D. Tex. 2025). Entered on July 3, 2025.
[6] CMS Internet-Only Manual, Pub. No. 100-07, State Operations Manual (SOM), Chapter 3, Additional Program Activities, § 3046D - Effective Date of Voluntary Termination (emphasis added), *available at* https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/som107c03pdf.pdf.

**SheppardMullin**

Departmental Appeals Board's Electronic Filing System ("DAB E-File")
Department of Health & Human Services
July 7, 2025
Page 4

continuing settlement discussions relating to the Voluntary Termination effective date and a proposed payment reduction, CMS suddenly reversed course, stating that there would be no further conversations about a potential resolution and that CMS was terminating Medicare enrollment for Crozer Chester Medical Center and the Outpatient Facilities effective as of June 21, 2025.

**2.   ARGUMENT**

   **a.   Legal Standard**

A provider dissatisfied with an initial determination by CMS to terminate its provider agreement is entitled to a hearing before an administrative law judge (ALJ).[7] An initial determination subject to appeal includes termination by CMS in accordance with the provisions of 42 C.F.R. § 489.53, which provides that CMS may terminate the agreement of any provider if it is not complying with the provisions of title XVIII and the applicable regulations of Chapter IV of Title 42 of the Code of Regulations or with the provisions of the Medicare provider agreement.[8] The request for hearing must identify the specific issues, and the findings of fact and conclusions of law with which the affected party disagrees, and must specify the basis for contending that the findings and conclusions are incorrect.[9]

   **b.   CCMC's Voluntary Termination Should Be Effective August 1 Because CCMC Still Operates the Outpatient Facilities as Provider-Based Outpatient Departments**

Although the Medicare statute defines a hospital as an institution "*primarily* engaged" in providing diagnostic and therapeutic services to inpatients,[10] the statute also clearly recognizes that hospitals also provide services to outpatients.  For example, the statute commands the Medicare program to cover and pay for "medical and other health services" furnished by a provider or by others under arrangement with a provider,[11] including "hospital services (…) incident to physicians' services rendered to *outpatients*" and "diagnostic services which are […]furnished to an individual *as an outpatient* by a hospital or by others under arrangements with them made by a hospital, and […] ordinarily furnished by such hospital (or by others under such arrangements) to its *outpatients*."[12]

For that reason, and in light of the Sale Order and the anticipated Transaction closing date, in CCMC's discussions with CMS prior to filing its notice of voluntary termination, CCMC requested a voluntary termination effective date of August 1, 2025.[13] Effectively, CCMC sought to end its Medicare enrollment on the date that CCMC ceased to provide hospital outpatient

---

[7] 42 C.F.R. § 498.5(b).
[8] *Id.* § 498.3(b)(8).
[9] *Id.* § 498.40(b).
[10] 42 U.S.C. § 1395x(e) (emphasis added).
[11] 42 U.S.C. §§ 1396k(a)(2)(B); 1395x(s).
[12] 42 U.S.C. § 1395x(s) (emphasis added).
[13] *See* 42 C.F.R. § 489.52(a)(3).

App. 69

**SheppardMullin**

Departmental Appeals Board's Electronic Filing System ("DAB E-File")
Department of Health & Human Services
July 7, 2025
Page 5

services to Medicare patients at the Outpatient Facilities. As of the date of this appeal, the Outpatient Facilities continue to hold valid, active licenses from the Pennsylvania Department of Health and continue to meet the requirements to bill Medicare as "provider-based" hospital outpatient departments under 42 C.F.R. § 413.65(d)(1)–(5) and (e)(1)–(3), except insofar as the "main provider" ceased providing inpatient services on May 2, 2025.

Specifically:

- **Licensure (§ 413.65(d)(1)).** As of June 6, 2025, the Pennsylvania Department of Health, the state survey agency charged with surveying CCMC for compliance with the Medicare Conditions of Participations, still had not terminated CCMC's hospital license and the imaging facilities are operated on the same license as the CCMC hospital. Pennsylvania state law requires the three (3) ambulatory surgical facilities to be separately licensed and those ASF licenses also remain valid and active.[14]

- **Clinical services (§ 413.65(d)(2)).** The Outpatient Facilities are accredited by The Joint Commission as part of the Crozer-Chester Medical Center. Historically, the clinical services of the Outpatient Facilities were fully integrated with the inpatient services offered at the main provider facility. The medical records for patients at the Outpatient Facilities remain integrated into a unified retrieval system for all CCMC patients.

- **Financial integration (§ 413.65(d)(3)).** The financial operations of the Outpatient Facilities are fully integrated and income and expenses for the Outpatient Facilities appear on the Crozer-Chester Medical Center Medicare Cost Report.

- **Public awareness (§ 413.65(d)(4)).** The Outpatient Facilities are held out to the public using the same signage as they were before closure of inpatient services and the emergency department. When patients enter the Outpatient Facilities, they are aware that those facilities have been part of the Crozer-Chester Medical Center and they are billed accordingly.

- **Operation under the ownership and control of the main provider (§ 413.65(e)(1)).** The Outpatient Facilities will remain 100 percent owned by CCMC and operated under the same CCMC organizational documents until the Transaction closing date. CCMC has final responsibility for administrative decisions and personnel actions and CCMC or its parent entities (Prospect Crozer, LLC and Prospect Medical Holdings, Inc.) contract with outside parties for the Outpatient Facilities. .

- **Administration and supervision (§ 413.65(e)(2)).** "The administration and supervision of the Outpatient Facilities has remained the same since prior to May 1, 2025, under the direction of the interim Chief Executive Officer of the hospital, Greg Williams, and the Vice President for Ancillary Services, Guy Voelbel. The administrative functions of the Outpatient Facilities were integrated with the main provider and have not changed,

---

[14] *See* 35 P.S. § 448.806(f).

**SheppardMullin**

Departmental Appeals Board's Electronic Filing System ("DAB E-File")
Department of Health & Human Services
July 7, 2025
Page 6

- **Location (§ 413.65(e)(3)).** The Outpatient Facilities have not relocated since May 1, 2025 and continue to be located within a thirty-five (35) mile radius of the Crozer-Chester Medical Center facility located at One Medical Center Blvd., Chester PA 19103.

- including billing services, records, human resources, payroll, employee salary and benefits and purchasing services. Many of the same employees and vendors that provide these services to the main provider also provide the services to the Outpatient Facilities. In fact, one of the financial challenges posed by maintaining services at the Outpatient Facilities has been that they are supported by contracts with vendors for services shared between the inpatient facility and all of CCMC's hospital outpatient departments, such that they cannot easily be amended or terminated in light of the closure of the inpatient facility.

- **Location (§ 413.65(e)(3)).** The Outpatient Facilities have not relocated since May 1, 2025 and continue to be located within a thirty-five (35) mile radius of the Crozer-Chester Medical Center facility located at One Medical Center Blvd., Chester PA 19103.

- **Obligations of hospital outpatient departments and hospital-based entities (§ 413.65(g)).** The Outpatient Facilities still comply with the terms of the hospital's provider agreement and the applicable health and safety rules for Medicare participating hospitals. The Outpatient Facilities treat all Medicare patients, for billing purposes, as hospital outpatients. The Outpatient Facilities provide written notices to Medicare beneficiaries, before delivery of services, of their potential financial liability for a hospital outpatient visit. Physicians who practice at the Outpatient Facilities remain required to comply with the non-discrimination provisions specified in 42 C.F.R. 489.10.

CCMC therefore has not ceased providing services to the community. CMS's decision to disregard CCMC's request for a Voluntary Termination with an effective date of August 1, 2025 and to proceed with the Enrollment Termination effective June 21, 2025 will cause significant disruption to Medicare patients, the independent physicians and clinicians who are performing procedures or ordering imaging services at the Outpatient Facilities, the staff employed by the Outpatient Facilities, and the community.

    c.    **CCMC's Termination Date Should Be Delayed Based on CMS's Own Policies Regarding Provider Terminations**

CMS has broad discretion in effectuating provider enrollments and terminations in a manner consistent with the objectives of the Medicare program. In accordance with this broad discretion, CMS regulations governing voluntary terminations allow a provider to request an effective date of up to six (6) months after the provider sends written notice to CMS of its intent to terminate its enrollment, and authorizes CMS to accept a termination date that is less than six (6) months from the date of the notice only "if it determines that to do so would not unduly disrupt services to the community or otherwise interfere with the effective and efficient administration of the Medicare program."[15]

Here, a voluntary termination was contemplated in accordance with CMS guidance and discretionary authority. CMS has not articulated any rationale as to why a voluntary termination

---

[15] 42 C.F.R. § 489.52(b)(2).

**SheppardMullin**

Departmental Appeals Board's Electronic Filing System ("DAB E-File")
Department of Health & Human Services
July 7, 2025
Page 7

has been disallowed, despite clear guidance suggesting that the voluntary termination procedure exists for specifically this purpose—**to prevent disruptions in patient care** when alleged noncompliance with Medicare enrollment requirements are actively and imminently to be remedied within the specified time period of up to six (6) months. Under such circumstances, where a voluntary termination has been under discussion and clearly aligns with CMS guidance, for CMS to instead proceed with an *involuntary* termination is inconsistent with CMS's own guidance and therefore should be reversed.

### 3. CONCLUSION

For the foregoing reasons, the Enrollment Termination effective June 21, 2025 should be reversed and CMS should instead accept CCMC's Voluntary Termination with an effective date of August 1, 2025.

\*   \*   \*

Sincerely,

Signed by:
*Margia Corner*
F13D98B9C5F1454...

Margia Corner
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:  Michele Purdue, Chief Counsel
     Office of the General Counsel
     801 Market Street, Suite 9700
     Philadelphia, PA 19107
     Michele.Purdue@hhs.gov



July 7, 2025

**VIA DAB E-FILE & E-MAIL**
https://dab.efile.hhs.gov/

Department of Health & Human Services
Departmental Appeals Board, MS 6132
Director, Civil Remedies Division
330 Independence Avenue, S.W.
Cohen Building – Room G-644
Washington, D.C. 20201
(202) 565-9462

   **Re: Appointment of Representative for Prospect CCMC LLC d/b/a Crozer-Chester Medical Center (CCMC)**
     **CMS Certification Number (CCN): 390180**

Dear Sir or Madam,

On behalf of Prospect CCMC LLC d/b/a Crozer-Chester Medical Center ("CCMC"), I hereby appoint Margia Corner of Sheppard, Mullin, Richter and Hampton LLP to represent CCMC in relation to the above-referenced Medicare provider agreement termination and appeal, in accordance with 42 C.F.R. § 498.10 (Appointment of representatives) and other applicable law and regulation, including but not limited to appeal rights set forth in Section 1866 of the Social Security Act and the regulations of the Centers for Medicare & Medicaid Services ("CMS") governing appeal hearing requests at 42 C.F.R. part 498 (42 C.F.R. §§ 498.1 *et seq.*).

Please direct all communications relating to this appeal to:

Margia Corner
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
mcorner@sheppardmullin.com
(415) 774-2913 (direct)
(415) 434-3947 (fax)

Respectfully submitted,

*Greg Williams* (DocuSigned by: F468EE43D8F34CF...)

Greg Williams
Interim Chief Executive Officer
Prospect CCMC, LLC

cc:    Michele Purdue, Chief Counsel
Office of the General Counsel
801 Market Street, Suite 9700
Philadelphia, PA 19107
Michele.Purdue@hhs.gov