SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    tom.califano@sidley.com
    rpatel@sidley.com
    mquejada@sidley.com

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Jon W. Muenz (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:    wcurtin@sidley.com
    jmuenz@sidley.com
    pventer@sidley.com
    anne.wallice@sidley.com

*Attorneys for the Crozer Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.* [1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 25-80002 (SGJ)<br>(Jointly Administered) |
| PROSPECT CCMC, LLC; *et al.*, [2]<br><br>       Plaintiffs,<br><br>   v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary, United States Department of Health and Human Services; and MEHMET OZ, in his official capacity as Administrator, Centers For Medicare and Medicaid Services,<br><br>       Defendants. | Adv. Proc. No. 25-08009 (SGJ)<br>Rel. to Dkt. No. 8 |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect.  The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2]    The plaintiffs in this adversary proceeding are Prospect Penn, LLC; Prospect Crozer, LLC; Prospect CCMC, LLC; Prospect DCMH, LLC; Prospect Crozer Urgent Care, LLC; Prospect Penn Health Club, LLC; Prospect Crozer Home Health and Hospice, LLC; Prospect Crozer Ambulatory Surgery, LLC; Prospect Health Services PA, Inc.; and Prospect Provider Group PA, LLC.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ...................................................................................................................... 5

    I.    Plaintiffs Adequately Plead A Claim For Declaratory Relief (Count I). ........................... 5

        A.    The Court Has Subject Matter Jurisdiction To Adjudicate Plaintiffs' Declaratory
Judgment Claim. ...................................................................................................... 5

        B.    Defendants Have Waived Sovereign Immunity. ........................................................ 8

        C.    Plaintiffs Have Stated A Claim For Their Requested Declaration That Medicare
Reimbursements Constitute Property of the Estates Under Section 541. ........................... 10

        D.    Plaintiffs Are Not Seeking To "Liquidate Disputed Claims." ...................................... 12

        E.    The Police And Regulatory Power Exception Does Not Apply Because Defendants
Were Acting To Protect Their Pecuniary Interest. ............................................................. 13

        F.    The Doctrine of Recoupment is Inapplicable. .............................................................. 14

        G.    Plaintiffs' Declaratory Judgment Claim Is Not "Duplicative." ..................................... 17

    II.    Defendants' "Damages" Argument Does Not Provide A Basis For Dismissal Of Count II
Of The Complaint. .................................................................................................................. 18

    III.    Debtors Have Adequately Pled A Claim For Discriminatory Conduct Under 11 U.S.C.
525(a) (Count III). .................................................................................................................. 19

PRAYER FOR RELIEF ......................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Professional Home Health Care Agency v. Shalala,*
    164 F.3d 282 (5th Cir. 1999) ................................................................................ 8

*AHN Homecare, LLC v. Home Health Reimbursement and Health Care Financing Admin. (In re AHN Homecare, LLC),*
    222 B.R. 804 (N.D. Tex. 1998) ........................................................................ 6, 16

*Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. of Chicago* (*In re Ionosphere Clubs, Inc.),*
    156 B.R. 414 (S.D.N.Y. 1993) .............................................................................. 9

*Ashcroft v. Iqbal*
    556 U.S. 662, 663 (2009) ...................................................................................... 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................... 3, 4, 19

*Budget Serv. Co. v. Better Homes of Va., Inc.,*
    804 F.2d 289 (4th Cir. 1986) .............................................................................. 18

*Cent. Va. Cmty. Coll. v. Katz,*
    546 U.S. 356 (2006) ............................................................................................ 10

*Colle v. Brazos Cnty., Tex.,*
    981 F.2d 237 (5th Cir. 1993) ................................................................................ 4

*Conn. Student Loan Found. v. Riley,*
    948 F. Supp. 156 (D. Conn. 1996) ....................................................................... 5

*Cuffee v. Alt. Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. & Cmty. Dev. Corp.),*
    901 F.2d 325, 329 (3d Cir. 1990) ...................................................................... 18

*Dallas Healthcare, Inc. v. Health and Human Servs. Com'n,*
    921 F. Supp. 426 (N.D. Tex. 1996) ...................................................................... 8

*Dorsey v. Portfolio Equities, Inc.,*
    540 F.3d 333 (5th Cir. 2008) ................................................................................ 4

*Faulkner v. Arista Records, LLC,*
    797 F. Supp. 2d 299 (S.D.N.Y. 2011) .................................................................. 4

*Flores v. Rafi Law Grp., PLLC*,
  2024 WL 4988390 (D. Ariz. 2024) ...................................................................... 5

*Green v. Drexler (In re Feit & Drexler, Inc.)*,
  760 F.2d 406, 41 (2nd Cir. 1985) ........................................................................ 9

*Hahn v. JetBlue Airways Corp.*,
  738 F. Supp. 3d 229 (E.D.N.Y. 2024) ................................................................ 18

*Harker v. Wells Fargo Bank, NA (In re Krause)*,
  414 B.R. 243 (Bankr. S.D. Ohio 2009) ................................................................ 9

*Illuminate Labs, Inc. v. CHOQ, LLC*,
  1:24-CV-83-DII, 2024 WL 5397170 (W.D. Tex. July 24, 2024) ............................ 4

*In re Alpine Summit Energy Partners, Inc.*,
  No. 23-90739, 2024 WL 1775261 (Bankr. S.D. Tex. Apr. 24, 2024) ..................... 17

*In re Am. Med. Utilization Mgmt. Corp.*,
  494 B.R. 626 (Bankr. E.D.N.Y. 2013) ................................................................ 18

*In re Exquisito Services, Inc.*,
   823 F.2d 151 (5th Cir. 1987) ............................................................................ 20

*In re Freemyer Indus. Pressure, Inc.*,
  281 B.R. 262 (Bankr. N.D. Tex. 2002) ................................................................ 18

*In re Healthback, L.L.C.*,
  226 B.R. 464 (Bankr. W.D. Okla. 1998), *vacated on other grounds*, No. 97-22616-BH, 1999
  WL 35012949 (Bankr. W.D. Okla. May 28, 1999) ............................................... 11

*In re Mitchell*,
  398 B.R. 557 (Bankr. N.D. Miss. 2008) .............................................................. 19

*In re Nortel Networks, Inc.*,
  669 F.3d 128 (3d Cir. 2011) .............................................................................. 13

*In re North*,
  128 B.R. 592 (Bankr. D. Vt. 1991) ..................................................................... 14

*In re Orthotic Ctr., Inc.*,
  193 B.R. 832 (N.D. Ohio 1996) .......................................................................... 13

*In re Psychotherapy & Counseling Ctr., Inc.*,
  195 B.R. 522 (Bankr. D.C. 1996) ............................................................. 11, 20, 21

iv

*In re RX Pro of Miss., Inc.*,
    Adv. Proc. 16-00288-NPO, 2016 Bankr. LEXIS 4684 (Bankr. S.D. Miss. Mar. 4, 2016)....... 18

*In re Southern Scrap Material Co., LLC*,
    541 F.3d 584 (5th Cir. 2008) ................................................................................. 4

*In re Town & Cntry. Home Nursing Servs., Inc.*,
    963 F.2d 1146 (9th Cir. 1991) ............................................................................... 8

*In re Yonikus*,
    996 F.2d 866 (7th Cir. 1993), *abrogated on other grounds, Law v. Siegel*, 571 U.S. 415, 425
    (2014)................................................................................................................ 11

*Ingle v. Butler*,
    No. 2:24-CV-140-Z-BR, 2025 WL 1184657 (N.D. Tex. Apr. 1, 2025)................................... 5

*Kosadnar v. Metro. Life Ins. Co. (In re Kosadnar)*,
    157 F.3d 1011 (5th Cir. 1998)…………………………………………………………………15, 16

*Krystal Cadillac Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp. (In re Krystal Cadillac
    Oldsmobile GMC Truck, Inc.)*,
    142 F.3d 631 (3d Cir. 1998)................................................................................... 12

*Lee v. Schweiker*,
    739 F.2d 870 (3d Cir. 1984)................................................................................... 15

*Martino v. First Nat'l Bank of Harvery (In re Garofalo's Finer Foods, Inc.)*,
    186 B.R. 414 (N.D. Ill. 1995) ............................................................................... 18

*Medicar Ambulance Co., Inc. v. Shalala (In re Medicar Ambulance Co., Inc.)*,
    166 B.R. 918 (Bankr. N.D. Cal. 1994) ..................................................... 11, 13, 14

*Mijares v. Pastorek (In re Mijares)*,
    No. 23-10831, 2024 WL 1855427 (5th Cir. 2024) ................................................... 15

*MV Realty PBC, LLC v. Off. of the AG*,
    658 B.R. 194 (Bankr. S.D. Fla. 2024)...................................................................... 10

*Nurse's Registry and Home Health Corp. v. Burwell (In re Nurses' Registry and Home Health
    Corp.)*,
    533 B.R. 590 (Bankr. E.D. Ky. 2015)...................................................................... 12

*Pa. R. Co. v. Miller*,
    124 F.2d 160 (5th Cir. 1941) ................................................................................ 17

v

*Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp.
Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*,
444 F.3d 203 (3d Cir. 2006) .................................................................................. 11

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*,
324 U.S. 806 (1945) ........................................................................................... 17

*Robinson v. Hunt Cnty., Tex.*,
921 F.3d 440 (5th Cir. 2019) .............................................................................. 17

*Sacramento Mun. Util. Dist. v. Mirant Americas Energy Mktg., LP (In re Mirant Corp.)*,
318 B.R. 377 (Bankr. N.D. Tex. 2004) ........................................................ 14, 15, 16

*Tenn. Student Assistance Corp. v. Hood*,
541 U.S. 440 (2004) ........................................................................................... 10

*Thurman v. Med. Transp. Mgmt. Inc.*,
982 F.3d 953 (5th Cir. 2020) ................................................................................ 3

*Timberlawn Mental Health System v. Burwell*,
2015 WL 4868842 (N.D. Tex. 2015) ...................................................................... 8

*True Health Diagnostics LLC v. Azar (In re THG Holdings LLC)*,
604 B.R. 154 (Bankr. D. Del. 2019) .............................................................. passim

*Trump v. J.G.G.*,
145 S.Ct. 1003 (2025) (Sotomayor, J., dissenting) .................................................. 17

*United States ex rel. Ramadoss v. Caremark Inc.*,
No. SA-99-CA-00914-WRF, 2008 U.S. Dist. LEXIS 71299 (W.D. Tex. 2008) ................... 15

*United States v. Dewey Freight Sys., Inc. (In re Dewey Freight Sys., Inc.)*,
31 F.3d 620 (8th Cir. 1994) ................................................................................. 15

*United States v. Inslaw, Inc.*,
932 F.2d 1467 (D.C. Cir. 1991) ............................................................................ 12

*United States v. Whiting Pools, Inc.*,
462 U.S. 198 (1983) ........................................................................................... 13

*University Medical Center v. Sullivan (In re University Medical Center)*,
973 F.2d 1065 (3d Cir. 1992) ....................................................................... passim

**Statutes**
11 U.S.C. § 105 ......................................................................................... passim

11 U.S.C. § 106(a) ............................................................................................ 17, 18

11 U.S.C. § 362 ................................................................................................ passim

11 U.S.C. § 525 ................................................................................................ passim
11 U.S.C. § 541 ................................................................................................ 18, 20

11 U.S.C. § 542 ................................................................................................ 21, 22

28 U.S.C. § 1334(e)(1) ...................................................................................... 14

28 U.S.C. § 2202 .............................................................................................. 14

**Rules**

Fed. Rule of Ev. 408(a) .................................................................................... 9

Fed. Rule of Civ. Pro. 12(b)(6) ...................................................................... 8, 19

Fed. Rule of Bankr. Pro. 7012 ........................................................................ 8

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Certain debtor affiliates of Prospect Medical Holdings, Inc., as debtors and debtors in possession (collectively, "Plaintiffs" or "Crozer Debtors"), by and through their undersigned attorneys, file this brief in opposition to the *Defendants' Motion to Dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief* [Docket No. 7] and *Defendants' Brief in Support of the Motion to Dismiss* [Docket No. 8] (the "Motion" cited herein as "Mtn. [●]") filed by Robert F. Kennedy, Jr., in his official capacity as Secretary, United States Department of Health and Human Serves ("HHS") and Dr. Mehmet Oz, in his official capacity as Administrator, Centers for Medicare and Medicaid Services ("CMS") (together, "Defendants"), seeking to dismiss the adversary complaint (the "Complaint" cited herein as "Compl. ¶ [●]").[1]  For the reasons discussed herein, the Motion should be denied.

## PRELIMINARY STATEMENT

1.      The Crozer Debtors' allegations are straightforward and will be supported by the evidence: the Defendants have taken adverse regulatory action with respect to the hospitals and threatened fraud-based penalties in connection with Medicare reimbursements solely on the basis of the Crozer Debtors' status as chapter 11 debtors and in an effort to improperly collect pre-petition debts.

2.      Defendants do not want the Crozer Debtors' claims to be given a fair hearing. Instead, they predictably seek early dismissal based on an assortment of technical defenses, none of which have merit.

---

[1]     All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Complaint.

3.      With respect to Plaintiffs' Declaratory Judgment Claim: (i) the Court has subject matter jurisdiction because Plaintiffs seek to remedy a continuing wrong—the inability to submit Medicare claims for reimbursement—and because the Court has independent jurisdiction under the Bankruptcy Code (Section I.A); (ii) Defendants have waived sovereign immunity over each of the forms of declaratory relief that Plaintiffs seek (Section I.B); (iii) Medicare reimbursements clearly constitute property of the estate (Section I.C); (iv) Plaintiffs are seeking to protect property of the estate in the face of stay violations, not to "liquidate disputed claims" (Section I.D); (v) Defendants cannot hide behind their police and regulatory powers when acting to protect their own pecuniary interests (Section I.E); (vi) the doctrine of recoupment does not apply to protect Defendants' conduct, and Defendants' arguments are not an appropriate basis for Rule 12(b)(6) dismissal as they require development through discovery (Section I.F); and (vii) Plaintiffs' declaratory relief is independent and non-duplicative of the damages that it seeks (Section I.G).

4.      With respect to Plaintiffs' damages claim for violation of Section 362(a), (i) numerous courts have found that corporate debtors qualify to pursue damages under Section 362(k) and (ii) regardless, the Court can award damages under Section 105(a). *See infra* Section II.

5.      With respect to Plaintiffs' damages claim for violation of Section 525, Defendants' self-serving assertion that they were not, in fact, discriminating against Plaintiffs based on their status as debtors carries no weight in the context of a Rule 12(b)(6) motion (and in any event is non-credible). *See infra* Section III.

## STATEMENT OF FACTS

6.      The facts giving rise to Plaintiffs' claims are alleged in detailed fashion in the Complaint, which factual allegations are incorporated by reference herein.  In summary, the Complaint seeks declaratory, injunctive, and monetary relief with respect to Defendants' willful

violation of the automatic stay and discrimination against Plaintiffs based solely on their status as chapter 11 debtors.  Compl. ¶ 1.

7.      The Crozer Debtors have closed their Pennsylvania Hospitals but operated affiliated Pennsylvania ASC/Imaging Sites pending their sale (which sale closed subsequent to the date of the Complaint).  Compl. ¶ 2.  The Crozer Debtors had been in discussions with Defendants since May 29, 2025 regarding voluntary termination of Medicare enrollment for CCMC on a mutually agreeable date and a reduction in fee-for-service payments for the services furnished at the Pennsylvania ASC/Imaging Sites in order to allow these sites to continue serving Medicare patients until the closing date of the sale.  *Id*. ¶ 2.  The Crozer Debtors' estate bore the cost of maintaining operations throughout the sale process, predicated on the understanding and Defendants' representations that the ongoing settlement discussion would permit a portion of fee-for-service payments to be billed for Medicare reimbursement.  *Id*. ¶ 3.

8.      On July 1, 2025, Defendants suddenly reversed course, cutting off negotiations and terminating Medicare enrollment for CCMC and the Pennsylvania ASC/Imaging Sites.  Compl. ¶ 4.  Defendants are discriminating against Plaintiffs for filing these chapter 11 cases in light of certain prepetition obligations Defendants believe are owed to them ahead of Plaintiffs' other creditors, and violating Section 362 and 525 of the Bankruptcy Code in the process.  *Id*. ¶ 5.

## **STANDARD OF REVIEW**

9.      Pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure, made applicable to adversary proceedings by way of Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Rules"), a court is to accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Thurman v. Med. Transp. Mgmt. Inc.*, 982 F.3d 953, 955 (5th Cir. 2020) (internal citations omitted).  A plaintiff is required only to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), such that

3

the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  Moreover, this standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the causes of action.  *Twombly*, 550 U.S. at 545; *see also In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (same).

10.    Courts are not allowed to "go outside the pleadings" when deciding a 12(b)(6) motion for failure to state a claim, *Colle v. Brazos Cnty., Tex.,* 981 F.2d 237, 243 (5th Cir. 1993), which are also "viewed with disfavor and [] rarely granted." *Illuminate Labs, Inc. v. CHOQ, LLC*, 1:24-CV-83-DII, 2024 WL 5397170, at *2 (W.D. Tex. July 24, 2024).  Accordingly, courts can rely only upon the complaint, proper exhibits attached thereto, "documents incorporated into the complaint by reference," and facts or documents of which a court may take judicial notice. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).  Documents attached to a defendant's motion to dismiss may only be considered in the court's decision-making "if they are referred to in the plaintiff's complaint and are central to [her] claim." *Illuminate Labs, Inc.,* 2024 WL 5397170, at *2.

11.    Defendants' Motion briefly discusses settlement negotiations when addressing the standard of review for a motion to dismiss.  It is not clear why Defendants have raised the issue of settlement negotiations, but what is clear is that settlement communications can be admitted for purposes other than "prov[ing] or disprov[ing] the validity or amount of a disputed claim[.]"  Fed. Rule of Ev. 408(a).  In addition, references to settlement communications should not be stricken from a complaint where they are offered for purposes of determining whether a plaintiff can assert a certain claim (rather than whether such claims are valid), *Faulkner v. Arista Records, LLC*, 797

F. Supp. 2d 299, 316-17 (S.D.N.Y. 2011), or where the content of the communications concerns

an independent claim, *Flores v. Rafi Law Grp., PLLC*, 2024 WL 4988390, at *2 (D. Ariz. 2024).

## ARGUMENT

**I.    Plaintiffs Adequately Plead A Claim For Declaratory Relief (Count I).**

### A.  The Court Has Subject Matter Jurisdiction To Adjudicate Plaintiffs' Declaratory Judgment Claim.

12.     Defendants argue that the Court lacks subject matter jurisdiction on two bases: (i)

that Plaintiffs cannot obtain a declaratory judgment with respect to a "past wrong" and (ii) that

Plaintiffs' claims are within the "exclusive jurisdiction" of Defendants themselves. Mtn. at 11-12.

Defendants are wrong on both counts.

13.     *First,* Defendants are incorrect that Plaintiffs have not "pleaded facts showing a

continuing harm or immediate threat of repeated harm." Mtn. at 10 (citing *Ingle v. Butler*, No.

2:24-CV-140-Z-BR, 2025 WL 1184657, at *7 (N.D. Tex. Apr. 1, 2025)).  As alleged in the

Complaint:

> On July 1, 2025, after more than a month of continuing settlement discussions relating to the Voluntary Termination and the Payment Reduction, CMS stated there would be no further conversations about a potential resolution and that CMS was terminating Medicare enrollment for CCMC and the Pennsylvania ASC/Imaging Sites effective as of June 21, 2025. **CMS also indicated that it would view claims for services furnished since May 1, 2025 as potentially "false or fraudulent," notwithstanding that the Crozer Debtors had not submitted further claims since the parties' initial discussions.**

Compl. ¶ 38 (emphasis added).

14.     As of the date of the Complaint—and continuing to this day—the Crozer Debtors

have refrained from submitting what they believe to be valid claims for Medicare reimbursements

to avoid the prospect of severe "fraud"-based penalties. *Id.* That is a textbook "continuing harm."

*See*, *e.g.*, *Conn. Student Loan Found. v. Riley*, 948 F. Supp. 156, 159 (D. Conn. 1996) ("The threat

of civil sanctions is an injury caused by the Secretary's actions and redressable by a declaratory

judgment.").

15.　　Second, Defendants assert that Plaintiffs' declaratory judgment claim is "within the

exclusive jurisdiction of the Secretary to adjudicate" because it implicates the Medicare Act and

Plaintiffs have not exhausted their administrative remedies.  Mtn. at 23.  Defendants' argument is

based on a red herring and, as set forth below, contrary to applicable case law.

16.　　Defendants assert that the relevant legal question is whether CMS could properly

"terminate CCMC's Medicare enrollment or refuse to accept and process [claims for] Medicare

Reimbursements after the Petition Date" pursuant to CMS's authority under the Medicare Act.

Mtn. at 11.  Whether CMS's decision was proper under the Medicare Act or whether CMS

employed the proper regulatory analysis, however, is *not* what Plaintiffs are asking this Court to

decide.  The only relevant question—which falls squarely under this Court's jurisdiction—is

whether CMS's decision to terminate CCMC's enrollment status unless Plaintiffs satisfied

prepetition debts owed to CMS violated the automatic stay or improperly discriminated against

Plaintiffs based upon their status as chapter 11 debtors in violation of Section 525.  It is irrelevant

whether such termination technically complied with the Medicare Act's regulatory framework.

*See, e.g., AHN Homecare, LLC v. Home Health Reimbursement and Health Care Financing

Admin. (In re AHN Homecare, LLC)*, 222 B.R. 804, 811 (N.D. Tex. 1998) ("With respect to the

cause of action based on the violation of the automatic stay, because it 'arises under' the

Bankruptcy Code and not the Medicare Act, this court has jurisdiction"); *True Health Diagnostics

LLC v. Azar (In re THG Holdings LLC)*, 604 B.R. 154, 162 (Bankr. D. Del. 2019) (finding

jurisdiction where "the issue before the Court is the narrow question of whether the Defendants

are in violation of the automatic stay by continuing to withhold Medicare payments post-petition
. . .based upon alleged pre-petition overpayments.").

17.    In *University Medical Center*, the Third Circuit court grappled with this issue at
length and held that "the Bankruptcy Code supplies an independent basis for jurisdiction" to
enforce the automatic stay against CMS with respect to the withholding of postpetition payments.
*University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1072 (3d
Cir. 1992).  There, much like here, that debtor brought suit to challenge CMS's attempts to collect
prepetition debts postpetition by withholding payments due and owing to plaintiff.  *Id.* at 1073.
There was no dispute between the parties as to the size of the alleged withheld reimbursements nor
prepetition overpayments and plaintiff did not challenge the statutory procedure under which HHS
makes routine payment adjustments with respect to non-bankrupt providers for overpayments.  *Id.*
at 1073.  Accordingly, that court concluded that it could determine whether HHS violated the
automatic stay without disturbing the regulatory framework of the Medicare Act because that
inquiry neither required a determination of the amount of any overpayment disputes nor an analysis
of the Medicare Act procedures.  *Id.*

18.    The Crozer Debtors similarly do not dispute the amount of prepetition debts owed
to CMS nor do they seek this Court's determination of the validity of those prepetition
overpayments.  Moreover, Plaintiffs do not challenge the Medicare statutory procedures and
regulatory framework under which CMS made its decision to terminate CCMC's Medicare
enrollment and withholding of payments.  In fact, Defendants acknowledge that Plaintiffs are
pursuing such a challenge through an administrative appeal that is wholly separate from this
adversary proceeding.  *See* Mtn. at 9.  Plaintiffs do not dispute CMS's "statutory authority to

terminate Medicare provider agreements." Mtn. at 5. Rather, they seek only a determination of whether there was a violation of the Bankruptcy Code, just like in *University Medical Center*.

19.    For these same reasons, courts have held that administrative exhaustion does not apply given that the bankruptcy court has independent jurisdiction to adjudicate alleged violations of the Bankruptcy Code. The *University Medical Center* court found "no danger of rendering the administrative review channel superfluous," because no administrative review channel exists to determine the issues raised by the plaintiff's complaint. *Id.* at 1073. Thus, because the Bankruptcy Court could exercise independent jurisdiction over the matter, there was no requirement to exhaust administrative remedies and the "congressionally-endorsed objectives of the effective and expeditious resolution of all matters connected to the bankruptcy estate" were advanced. *Id.* at 1073-74; *see also In re Town & Cntry. Home Nursing Servs., Inc.*, 963 F.2d 1146, 1154 (9th Cir. 1991) ("where there is an independent basis for bankruptcy court jurisdiction, exhaustion of administrative remedies pursuant to other jurisdictional statutes is not required.").[2]

## B. Defendants Have Waived Sovereign Immunity.

20.    Defendants assert that Plaintiffs' request for a declaration that Medicare reimbursements are property of the estate is "barred by sovereign immunity," arguing that Section 541 of the Bankruptcy Code is not explicitly among the "59 sections of the Bankruptcy Code that Congress elected to abrogate the United States' sovereign immunity." Mtn. at 15. This argument

---

[2]    Defendants' reliance on a series of 5th Circuit cases that do not address the specific question of whether the court has independent jurisdiction in this context are unavailing and irrelevant. *See* Mtn. 13-14. Plaintiffs in each of those cases requested relief in the form of a temporary restraining order preventing the governmental unit from terminating enrollment status pending an administrative appeal or declaration whether the governmental unit "applied the proper standard" in its decision-making. *Id.* (citing *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282 (5th Cir. 1999); *Timberlawn Mental Health System v. Burwell*, 2015 WL 4868842 (N.D. Tex. 2015); *Dallas Healthcare, Inc. v. Health and Human Servs. Com'n*, 921 F. Supp. 426 (N.D. Tex. 1996)).

ignores the fact that the declaratory relief requested is effectuated through (i) Section 105(a) and (ii) the *in rem* jurisdiction of the bankruptcy court.

21.    The Bankruptcy Code provides that bankruptcy courts have exclusive jurisdiction over property of the estate and property of the debtor, wherever located.  *See* 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction […] of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.").  Moreover, Congress has expressly waived sovereign immunity with respect to declaratory and injunctive relief, including such relief under Section 105(a), pursuant to Section 106(a) of the Bankruptcy Code.[3]  Under Section 105(a) of the Bankruptcy Code, this Court has broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including *in rem* authority to issue declaratory relief related to 28 U.S.C. § 2202.  *See, e.g. Harker v. Wells Fargo Bank, NA (In re Krause)*, 414 B.R. 243, 256-57 (Bankr. S.D. Ohio 2009) (finding that a declaratory judgment pursuant to 105(a) as to the rights and obligations of parties under a mortgage was *in rem*); *Green v. Drexler (In re Feit & Drexler, Inc.)*, 760 F.2d 406, 411, 414-15 (2nd Cir. 1985) (holding that a court had the power, pursuant to Section 105(a), to compel a defendant to deliver her property, which was the subject of a bankruptcy proceeding, from outside the court's territorial jurisdiction); *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.),* 156 B.R. 414, 436 (S.D.N.Y. 1993) (utilizing Section 105(a) to enjoin claimants from asserting claims that were the property of an estate in a bankruptcy proceeding).

---

[3]    According to Collier on Bankruptcy, "Congress made clear its intent to provide for an abrogation of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief [ ] This abrogation specifically includes most substantive sections of the Bankruptcy Code."  2 Collier on Bankruptcy P 106.04 (16th 2025).  Collier further notes that sovereign immunity is abrogated under Section 106(a) "whether or not the government units file proofs of claim in the bankruptcy case."  *Id.* at 106.05.

22.    As stated by the Supreme Court, the exercise of the *in rem* jurisdiction of the Court does not offend sovereign immunity.  *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447-448 (2004) (explaining that the bankruptcy court's exercise of *in rem* jurisdiction over estate property does not offend state sovereign immunity, as it operates to determine the rights in property of the estate rather than to enter a money judgment against a sovereign); *see also Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 378 (2006) ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.").  The declaratory judgment at issue here concerning Section 541 is entirely *in rem*, as it seeks an adjudication on what is and what is not property of Plaintiffs' bankruptcy estates.[4]

23.    Defendants do not assert that sovereign immunity bars the other forms of declaratory relief that Plaintiffs seek other than the relief sought with respect to Section 541 of the Bankruptcy Code.

### C.  Plaintiffs Have Stated A Claim For Their Requested Declaration That Medicare Reimbursements Constitute Property of the Estates Under Section 541.

24.    Defendants are incorrect that "the right to participate in the Medicare Program does not constitute a property interest," and therefore that Plaintiffs' claim for a declaration that Medicare Reimbursements constitute property of the estate should be dismissed.  Mtn. at 17.

25.    The Bankruptcy Code takes an expansive approach to the definition of property interests, which encompass "all legal or equitable interests of the debtor in property," including

---

[4]    *See MV Realty PBC, LLC v. Off. of the AG*, 658 B.R. 194, 205 (Bankr. S.D. Fla. 2024) (stating "the plaintiffs ask th[e] Court to prohibit interference with property of the estate and any equitable distribution that may follow. The plaintiffs' requested injunctions would effectuate the *in rem* jurisdiction of the bankruptcy court […] It is still appropriate to consider whether section 106(a) is an impediment to the claims pursued here. Clearly it is not, as section 106(a)(1) specifically includes section 105.").

"all interests, such as contingent interests and future interests" and "the mere opportunity to receive an economic benefit in the future." *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 211 (3d Cir. 2006) (internal citations omitted); *see also In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."), *abrogated on other grounds, Law v. Siegel*, 571 U.S. 415, 425 (2014).

26.    The court in *In re THG Holdings, LLC* found that "post-petition Medicare reimbursements are indisputably property of the estate… [Medicare] payments fall squarely within the scope of property of the estate under section 541." 604 B.R. at 160. Defendants fail to address or distinguish any of the many cases that support this conclusion,[5] support their argument with cases which do not concern Section 541 of the Bankruptcy Code,[6] and ignore that they have previously agreed in other cases that the right to receive Medicare payments is property of the debtors' estate.[7]

---

[5]    *See, e.g., In re Healthback, L.L.C.*, 226 B.R. 464, 470 n.4 (Bankr. W.D. Okla. 1998), *vacated on other grounds*, No. 97-22616-BH, 1999 WL 35012949 (Bankr. W.D. Okla. May 28, 1999) ("Any debts owing to the estate, such as reimbursements due from the Department of Health and Human Services, would be property of the estate, regardless of the payment procedures employed by the Department concerning such debts."); *In re Psychotherapy & Counseling Ctr., Inc.*, 195 B.R. 522, 532 (Bankr. D.C. 1996) ("[T]he debtor's rights under the provider agreements to participate in the Medicaid and Medicare provider reimbursement program are properly considered property of the estate. The debtor's rights under the agreement to receive reimbursement payments from government in this program clearly have value to the debtor[.]").

[6]    *See In re THG Holdings, LLC*, 604 B.R. 154, 161 (Bankr. D. Del 2019) ("In its opposition, Defendants cite two cases out of the Fifth Circuit which hold that health care providers do not have a property interest in Medicare reimbursements. However, those holdings […] do not address whether Medicare payments are property of a bankruptcy estate under section 541 [of the Bankruptcy Code].").

[7]    *See, e.,g., Medicar Ambulance Co., Inc. v. Shalala (In re Medicar Ambulance Co., Inc.)*, 166 B.R. 918, 927 (Bankr. N.D. Cal. 1994) ("HHS concedes that the suspended [Medicare] payments are property of the estate.").

**D. Plaintiffs Are Not Seeking To "Liquidate Disputed Claims."**

27.     Defendants cite, both directly and indirectly, to *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991) for the proposition that the Crozer Debtors are using the automatic stay improperly to liquidate "claims for property or payments that are in dispute." Mtn. at 17. Contrary to this assertion, the Crozer Debtors are not attempting to liquidate any claims or otherwise requesting that the Court determine the amounts due and owing on their claims; rather, they are seeking to enforce the automatic stay to protect property of the estate.

28.     *Inslaw*'s holding focuses on a debtors' efforts to assert the automatic stay against prepetition acts of fraud and is thus inapplicable where defendants' violations of the automatic stay occurred after the petition date.[8] As in *Krystal Cadillac*, "the asset itself is at the core of the dispute" and, accordingly, "*Inslaw . . .* [is] not relevant here." *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp. (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.)* 142 F.3d 631, 638 n.13 (3d Cir. 1998).

29.     Further, debtors may invoke Section 542 of the Bankruptcy Code even where the title of the asset is in dispute, including in the context of Medicare payments. *See, e.g.*, *Nurse's Registry and Home Health Corp. v. Burwell (In re Nurses' Registry and Home Health Corp.)*, 533 B.R. 590, 597 (Bankr. E.D. Ky. 2015) (finding that CMS was not entitled to a stay pending appeal from orders enjoining the suspension of Medicare payments to the debtor and holding "[w]hatever the theoretical basis for *Inslaw*'s judicial gloss on § 542, authorities that do bind this Court hold that debtors can invoke § 542 where title is in dispute. Chief among them is the Supreme Court

---

[8]     *See In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 638 (3d Cir. 1998) ("The [*Inslaw*] court found that the debtor was trying to remedy pre-petition acts of fraud, bias or harassment allegedly on the part of the Justice Department by invoking the automatic stay provisions. Because section 362(a) applies only to acts taken after the petition is filed, the court held that the bankruptcy court lacked jurisdiction to resolve the contract dispute between *Inslaw* and the Justice Department.") (internal citations omitted).

itself."); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211 (1983) (sanctioning a turnover

action under Section 542 and resolving a title dispute between a bankruptcy estate and the IRS).

30.    Defendant's citation to *In re Orthotic Ctr., Inc.*, 193 B.R. 832 (N.D. Ohio 1996) is

similarly misplaced.  There, the district court ruled on the narrow issue of whether the suspension

of Medicare reimbursements fell within the automatic stay exception for the government unit's

police and regulatory powers.  *See id*. at 834. ("The narrow issue in this appeal is the following:

Does the Secretary's suspension of Medicare reimbursement payments come within the automatic

stay exception for a governmental unit's police or regulatory power?").  As outlined below, not

only does this exception not apply here, but courts have recently declined to follow *Orthotic Center*

in favor of *In re Medicar Ambulance Co., Inc.*, 166 B.R. 918 (Bankr. N.D. Cal. 1994) and *In re

University Medical Center v. Sullivan*, 973 F.2d. 1065 (3rd Cir. 1992).[9]

### E.  The Police And Regulatory Power Exception Does Not Apply Because Defendants Were Acting To Protect Their Pecuniary Interest.

31.    Defendants can satisfy neither applicable test—the pecuniary purpose test nor

public policy test—to qualify for the police and regulatory power exception of Section 362(b)(4).

*See In re Nortel Networks, Inc.*, 669 F.3d 128, 140 (3d Cir. 2011).  Key under the pecuniary test

is "whether the government primarily seeks to protect a pecuniary interest in the debtor's

property" rather than public health and safety.  *Id.* at 140-41.  Key under the public policy test is

whether the law's/decision's purpose is to promote public safety and welfare as opposed to

adjudicate private rights.  *Id.* at 141.  Moreover, "where it is obvious the plain purpose" of a

governmental unit's action is "to serve a pecuniary interest," courts require proof beyond just a

---

[9]    *See, e.g., In re THG Holdings LLC*, 604 B.R. 154, 159 (2019) (applying the reasoning in *University Medical Center* after hearing arguments from CMS that *Orthotic Center* should apply).

"governmental unit's unsupported explanation that its actions serve public safety, health, and welfare." *In re North*, 128 B.R. 592, 602 (Bankr. D. Vt. 1991).

32.     Particularly instructive here is *In re THG Holdings LLC*, where CMS similarly withheld postpetition Medicare payments due on account of alleged fraud allegations and plaintiff-debtor sought to enforce the automatic stay. 604 B.R. at 158. That court found it was clear that CMS's conduct was the "exact conduct that the pecuniary interest [test] was designed to prohibit"—namely, withholding postpetition payments on account of prepetition overpayments. *See id.* Likewise, in *In re Medicar Ambulance Co., Inc.*, the court found that CMS's purported justification for suspending postpetition payments, alleged fraud, would qualify as an exception to the automatic stay if substantiated. 166 B.R. at 928. But, "inasmuch as the suspension is an attempt to enforce a monetary claim, it exceeds the scope of the police power exception." *Id.* at 927.

33.     Defendants' bare contention that they are seeking to serve the public interest, rather than their own pecuniary motives, should not be credited on a Rule 12(b)(6) motion to dismiss. In any event, Defendants' contention is non-credible given that CMS engaged in negotiations with Plaintiffs regarding their continued operation of the Pennsylvania ASC/Imaging Sites before abruptly terminating CCMC's enrollment status. *See* Compl. ¶¶ 32, 40.

### F.  The Doctrine of Recoupment is Inapplicable.

34.     Defendants argue that Plaintiffs' declaratory judgment claim with respect to violation of the automatic stay must be dismissed because Defendants have "independent statutory and regulatory" recoupment rights. Mtn. at 21. This argument is based on a flawed premise because the doctrine of recoupment does not apply here.

35.     Recoupment is an equitable doctrine that should be "narrowly applied." *Sacramento Mun. Util. Dist. v. Mirant Americas Energy Mktg., LP (In re Mirant Corp.)*, 318 B.R.

377, 381 (Bankr. N.D. Tex. 2004); *see also, e.g., Mijares v. Pastorek* (*In re Mijares*), No. 23-10831, 2024 WL 1855427, at *3 n.5 (5th Cir. 2024) (citing to *In re Mirant Corp.* and affirming the bankruptcy court's decision to deny recoupment on the basis of fairness and equity). Under Texas law, recoupment is "a defensive doctrine whereby a defendant can reduce a plaintiff's claim[.]" *United States ex rel. Ramadoss v. Caremark Inc.*, No. SA-99-CA-00914-WRF, 2008 U.S. Dist. LEXIS 71299, at *34 (W.D. Tex. 2008). Importantly, "[t]he party wittingly ignoring the stay, of course, bears the burden of showing the propriety of recoupment." *In re Mirant Corp.* 318 B.R. at 384, n.5. Defendants have failed to do so here.

36.      In order to qualify for recoupment, the claims of both debtor and creditor must arise out of the "same transaction," although "[t]here is no general standard," and each court makes a case-by-case determination predicated on "the facts and the equities" of the current instance. *In re Mirant Corp.*, 318 B.R. at 381-82 (quoting *United States v. Dewey Freight Sys., Inc.* (*In re Dewey Freight Sys., Inc.*), 31 F.3d 620 (8th Cir. 1994) and *Kosadnar v. Metro. Life Ins. Co.* (*In re Kosadnar*), 157 F.3d 1011 (5th Cir. 1998)). "The fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, [] does not mean that the two arose from 'the same transaction.'" *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984). Nor are claims that arise under the same contract dispositive. *In re Mirant Corp.* 318 B.R. at 381 ("that the claims arise under the same contract is not dispositive of the 'same transaction' requirement.").

37.      As a result of this case-by-case application, courts have reached a variety of conclusions on whether Medicare payments meet this "single transaction" standard. *See, e.g.*, *In re University Medical Center*, 973 F.2d at 1081 (holding that Medicare payments across years did not qualify as a single transaction); *In re THG Holdings LLC*, 604 B.R. at 159 (following the *University Medical Center* reasoning in holding that the automatic stay applied to withheld

Medicare payments); *cf. In re AHN Homecare, LLC,* 222 B.R. at 812 (disagreeing with the *University Medical Center* reasoning and finding that Medicare payments met the single transaction standard for recoupment).

38.    Defendants cite to *In re AHN Homecare, LLC* to insinuate Medicare payments should be recouped across cost years. 222 B.R. at 806. However, this ruling hinges on the fact that all claims arose from a single contract between the parties,[10] and the Court of Appeals for the Fifth Circuit has since determined "that the claims arise under the same contract is not dispositive of the 'same transaction' requirement." *In re Mirant Corp.* 318 B.R. at 381 (quoting *In re Kosadnar* 157 F.3d at 1015).

39.    Moreover, Plaintiffs' case is factually distinct. The recoupment in *In re AHN Homecare, LLC* began prior to the petition date. 222 B.R. at 806 ("[Medicare intermediary] began recoupment in late November. On December 3, 1997, [debtor] filed for protection under Chapter 11"). Here, recoupment is being raised as a defense to claims that arose *postpetition* from *an entirely separate transaction. See* Mtn. at 20-21. Not only did Defendants represent that the Pennsylvania ASC/Imaging Sites would be permitted to bill Medicare for postpetition services but also Plaintiffs' claims relate to a bad faith termination of negotiations by Defendants, which constitutes a separate transaction entirely from the contract giving rise to prepetition debts. *See* Compl. ¶¶ 4-5, 32, 36, 38, 40. Accordingly, the Court should find Defendants' prepetition claims from separate cost years are "independently determinable" and thus cannot be recouped or set-off against postpetition Medicare reimbursements. *In re Univ. Med. Ctr.*, 973 F.2d at 1081. At a

---

[10]    *See In re AHN Homecare, LLC*, 222 B.R. at 811-812 (affirming that "recoupment was allowed [in *Heffernan*] because the 'claims arose from a single contract, thereby satisfying the 'same transaction' requirement for recoupment'" and holding "recoupment is justified in single-contract cases because 'there is but one recovery due on a contract'") (quoting *In re Heffernan Memorial Hospital District.,* 192 B.R. 228, 231 (Bankr. S.D. Ca. 1996)).

minimum, Defendants' arguments require development through discovery and are not an appropriate basis for Rule 12(b)(6) dismissal.

40.     Finally, recoupment "is a doctrine of intrinsically defensive nature founded upon an equitable reason, [] why the plaintiff's claim in equity and good conscience should be reduced." *In re Alpine Summit Energy Partners, Inc.*, No. 23-90739, 2024 WL 1775261, at *6-7 (Bankr. S.D. Tex. Apr. 24, 2024) (quoting *Pa. R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941)).  There is no equitable reason to apply the doctrine of recoupment here.   As detailed in the Complaint, Defendants entered into negotiations with the Crozer Debtors, who continued to operate the Pennsylvania ASC/Imaging Sites in reliance upon the reimbursement of billable Medicare services.  *See* Compl. ¶¶ 4-5, 36, 38.  Defendants then turned around *after these services had been rendered* to terminate negotiations and refuse to pay these claims in an effort to extract payment of prepetition claims.  *See* Compl. ¶¶ 32, 40.  In short, Defendants cannot assert an equitable doctrine with unclean hands.  *See, e.g., Trump v. J.G.G.*, 145 S.Ct. 1003, 1016 (2025) (Sotomayor, J., dissenting) (citing the Supreme Court's long-standing maxim that "he who comes into equity must come with clean hands") (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945)).

### G.  Plaintiffs' Declaratory Judgment Claim Is Not "Duplicative."

41.     Defendants argue that the declaratory relief requested under Count I must be dismissed because it is "inherently duplicative" of damages requested under Counts II and III for violations of Sections 362(a) and 525(a), respectively.  Mtn. at 11.  Damages and declaratory relief are independent and non-duplicative relief.   Declaratory relief in this instance would allow Plaintiffs to submit claims for reimbursements, whereas damages arising from Defendants' conduct can recompense for past and ongoing harm and will be in an amount proven at trial.  *See, e.g., Robinson v. Hunt Cnty., Tex.,* 921 F.3d 440, 450 (5th Cir. 2019) (finding declaratory relief

non-duplicative of monetary damages). *Cf. Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229,

254 (E.D.N.Y. 2024) ("Courts generally reject a declaratory judgment claim as duplicative when

other claims in the suit will resolve the same issues . . .").

## II. Defendants' "Damages" Argument Does Not Provide A Basis For Dismissal Of Count II Of The Complaint.

42.     As Defendants concede, "the caselaw is mixed" on whether corporate debtors

qualify as "individuals" under Section 362(k) for purposes of entitlement to damages for willful

violations of the automatic stay.  Mtn. at 22 (quoting *In re Freemyer Indus. Pressure, Inc.*, 281

B.R. 262, 268 (Bankr. N.D. Tex. 2002)); *see also, e.g., Cuffee v. Alt. Bus. & Cmty. Dev. Corp. (In

re Atlantic Bus. & Cmty. Dev. Corp.*), 901 F.2d 325, 329 (3d Cir. 1990) (stating that "[a]lthough

Section 362(h) refers to an individual, the section has uniformly been held to be applicable to a

corporate debtor"); *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir.

1986) ("we construe the word 'individual' to include a corporate debtor"); *Martino v. First Nat'l

Bank of Harvery (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 439 (N.D. Ill. 1995) (holding

that a chapter 7 trustee may recover damages on behalf of a bankruptcy estate pursuant to 362(h)).

43.     Even if the Court finds that corporate debtors cannot recover damages under

Section 362(k), however, this does not preclude the Court's assessment of discretionary damages

under Section 105(a) for violations of the automatic stay.  Courts in the Fifth Circuit and others

have awarded damages to trustees and corporate debtors for stay violations under Section 105(a),

even where relief under Section 362(k) only applied to natural persons.  *See, e.g., In re RX Pro of

Miss., Inc.*, Adv. Proc. 16-00288-NPO, 2016 Bankr. LEXIS 4684, at \*19-20 (Bankr. S.D. Miss.

Mar. 4, 2016) (granting corporate debtor relief under § 105 for violation of the automatic stay); *In

re Atlantic Bus. & Cmty. Dev. Corp.*, 901 F.2d at 329 (granting damages for stay violations to a

corporate debtor); *In re Am. Med. Utilization Mgmt. Corp.*, 494 B.R. 626, 635 (Bankr. E.D.N.Y.

2013) (awarding chapter 11 trustee legal fees and costs due to respondent's failure to reverse actions taken in violation of the stay).

### III.    Debtors Have Adequately Pled A Claim For Discriminatory Conduct Under 11 U.S.C. 525(a) (Count III).

44.    Defendants argue that CMS terminated CCMC's Medicare status exclusively because CCMC no longer was in compliance with the Medicare statutory and regulatory provisions. Defendants' self-serving assertion is irrelevant for purposes of the instant motion, where Plaintiffs' well-pled allegations—including their allegations regarding Defendants' termination motives—must be accepted as true. Defendants are also inconsistent regarding their own purported motives for terminating CCMC's enrollment status, sometimes stating it was "required" and sometimes alluding to a discretionary decision. *See, e.g.,* Mtn. at 1-2, 3 ("The Medicare Act [] *mandates* that CMS terminate a provider's enrollment when the provider no longer qualifies as a hospital"; CMS has "statutory *authority* to terminate"; "Debtors attempt to challenge CMS' termination *decision*"; "CMS' *decision* to terminate CCMC as a Medicare provider") (emphasis added).

45.    Regardless, Defendants have failed to show that Plaintiffs have not "state[d] a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.

46.    Section 525(a) of the Bankruptcy Code outright "prevents discrimination against a debtor when the debtor has not paid a dischargeable debt." *In re Mitchell*, 398 B.R. 557 (Bankr. N.D. Miss. 2008) (denial of a license because of failure to pay unsecured debt discriminatory under Section 525(a)); 11 U.S.C. 525(a) ("[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license. . .condition such a grant to, discriminate with respect to such a grant against. . . a debtor under the Bankruptcy Act. . .solely because such bankrupt or debtor is or has been a debtor under this title. . . .or has not paid a debt that is dischargeable in the case under this

19

title or that was discharged under the Bankruptcy Act."). Fifth Circuit courts have further concluded "the impetus behind section 525(a) is to prevent governmental units from frustrating the policies of the Bankruptcy Code by discrimination against persons seeking relief" thereunder. *In re Exquisito Services, Inc.*, 823 F.2d 151, 155 (5th Cir. 1987) (internal citations omitted) (Air Force's decision not to renew contract because debtor had filed under chapter 11 is "the sort of conduct the statute was designed to prevent"). Moreover, once a debtor presents evidence or facts that a governmental entity's actions may have been based on impermissible and discriminatory facts, the burden may shift to that entity to "establish that its action was justified entirely by nonbankruptcy-related considerations." Lockhart, James, *Cause of Action Against Gov't Unit to Establish Violation of § 525(a) Bankruptcy Code Prohibiting Discriminatory Treatment Respecting License or Similar Grant*, 25 Causes of Action 565 (Originally published in 1991).

47.    In the middle of productive negotiations to keep the Pennsylvania ASC/Imaging Sites open, serving patients and submitting reduced fee-for-service reimbursement claims, CMS unexpectedly and abruptly ceased all negotiations and notified Plaintiffs that it was terminating CCMC's Medicare enrollment, effective in 15 days. *See* Compl. ¶¶ 4-5, 36, 38. As alleged, CMS insinuated it was interested in continuing discussions only if Plaintiffs repaid prepetition debts consisting of advance payments from CMS related to the COVID-19 pandemic and cost reports for individual claims debts. *See* Compl. ¶¶ 32, 40.

48.    CMS's conduct is similar to its treatment of debtors in *In re Psychotherapy and Counseling Center, Inc.*, 195 B.R. 522 (Bankr. D.D.C. 1996). There, HHS sought a declaration that it could exclude a debtor from participating in Medicare based on the debtor's default under a pre-petition settlement agreement. *See id.* at 524. However, the court found this attempted exclusion of "the debtor from a government program for non-payment of a dischargeable

prepetition debt" to be "potentially violative of the anti-discrimination provision under 11 U.S.C. § 525(a)." *Id.* at 534. HHS, who the court did acknowledge had the requisite authority to terminate plaintiff-debtors' Medicare enrollment status, failed to point to any "record or affidavit" establishing an alternative, nondiscriminatory basis for so doing. *Id.* at 531. Just as in *In re Psychotherapy*, CMS demanded satisfaction of prepetition debts in exchange for refraining from terminating CCMC's Medicare enrollment status. *See* Compl. ¶¶ 32, 40. Defendants' bare offering of alternative motivations supported by no "record or affidavit" are not enough to refute the plausibility that Defendants discriminated against the Plaintiffs in deciding to terminate CCMC's Medicare enrollment status on account of their failure to pay dischargeable debts and their status as debtors.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated herein, the Motion to Dismiss should be denied.

Dated:  September 9, 2025
Dallas, Texas

/s/ Jon W. Muenz

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com
               rpatel@sidley.com
               mquejada@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Jon W. Muenz (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:         wcurtin@sidley.com
               jmuenz@sidley.com
               pventer@sidley.com
               anne.wallice@sidley.com

*Attorneys for the Crozer Debtors*